JOURNAL ENTRY AND OPINION *Page 4 
{¶ 1} Appellant Joy Marshall appeals the trial court's decision finding her in contempt of court.[1] After a thorough review of the arguments, and for the reasons set forth below, we affirm in part and reverse and remand in part. Tyus v. Grande Pointe Health Community, a nursing home malpractice case, commenced August 31, 2005 in Cuyahoga County Common Pleas Court. Intervenor/appellee Dickson Campbell ("D C") represented plaintiff Bessie Tyus in that case. After Tyus decided to terminate representation, D C filed a motion to withdraw as her counsel, which was granted on February 27, 2006. Tyus obtained a new attorney, appellant Joy Marshall, who made an appearance on behalf of Tyus on February 28, 2006.[2]
 {¶ 2} In a March 20, 2006 journal entry, the court stated that the case had been settled and dismissed with prejudice, and the court expressly retained jurisdiction over post-judgment motions:
 {¶ 3} "Court notified that this case is SDWP at Defendant's costs. Final. This Court retains jurisdiction over all Post Judgment Motions. Court costs assessed to the Defendant(s). * * *." *Page 5 
 {¶ 4} On March 27, 2006, Marshall filed a motion to strike the ex parte notification of dismissal by defendants (Grande Pointe Health Community, et al.). In addition, she filed a motion for relief from judgment and a request for a status conference. The request for status conference was made because, according to Marshall, the case had not settled, and Tyus and Marshall were unaware of the defendants' communication to the court that the matter had been dismissed. The motion to strike was denied.
 {¶ 5} Also, on March 27, 2006, D C filed a motion to declare and enforce its charging lien for attorney's fees. D C asserted that it had a contingency fee contract with Tyus; the case had settled for $150,000; it had done 95 percent of the work; and it was entitled to 95 percent of the fee, plus expenses.[3]
 {¶ 6} On April 28, 2006, the court issued the following order:
 {¶ 7} "Pursuant to discussions with all counsel, the court has transmitted the check tendered to the court, as settlement in this matter, in the amount of $150,000 to * * * Ms. Joy Marshall. The court orders that Ms. Marshall may distribute no more than $85,000 * * * to the Plaintiff at this time; the remaining funds [$65,000] must be maintained in the proper accounts pending the court's ruling on the outstanding dispute regarding the lien on attorney's fees filed by plaintiff's prior counsel." *Page 6 
 {¶ 8} On June 22, 2006, D C withdrew its motion to declare and enforce the charging lien. On June 26, it filed a motion to intervene to assert the charging lien and renewed its motion to declare and enforce the charging lien. The motion to intervene was granted on June 26, 2006. Marshall filed a motion to withdraw as Tyus's counsel, which was granted on August 15, 2006. Tyus did not contest the motion to declare and enforce the charging lien and retained Cassandra Collier-Williams as her new counsel.
 {¶ 9} The remaining $65,000 of settlement funds was divided by the trial court with an award to D C of $47,500 for attorney's fees and $2,943 for costs incurred; $4,557 was to be paid to Marshall for her services; and Tyus was to receive $10,000. Tyus had no objections to this allocation.
 {¶ 10} Marshall was ordered to transmit the money to attorney Collier-Williams by August 18, 2006. On August 21, 2006, the court was informed that Marshall had not obeyed the order. Marshall was then ordered to appear on August 23, 2006 at 8:30 a.m. for a show cause hearing. She called to inform the court that she was running late in returning from Columbus, Ohio, and that she would be there as soon as possible. Consequently, she did not appear on time.
 {¶ 11} At the hearing, Tyus informed the court that Marshall had transmitted the entire $150,000 to her, despite the court's orders to give Tyus no more than $85,000 until the fee dispute had been settled. Tyus stated that upon receiving the money, she had paid Marshall $50,000 for attorney's fees in June or July 2006. *Page 7 
 {¶ 12} A bench warrant was issued for Marshall for her failure to appear. When she finally appeared in court, she was remanded to custody and then later released on bond.
 {¶ 13} On September 21, 2006, Marshall's show cause hearing was held. She did not produce the funds, but informed the court that she had transmitted the money to Tyus. According to her IOLTA records, she had given Tyus two checks: one for $85,000 and one for $65,000. Nothing in her records accounted for the check Tyus tendered to her. D C contended that it had received neither the $2,943.07 in expenses nor the $47,500 in attorney's fees. Marshall was remanded to jail for contempt. She is currently out on bond.
 {¶ 14} Marshall brings this appeal asserting seven assignments of error for our review; however, the dismissal of Appeal No. 88763, renders assignments of error II, III, IV, VI, and VII moot.
 {¶ 15} "I. The trial court lacked subject matter jurisdiction after it dismissed the case."
 {¶ 16} Appellant argues that the trial court did not have subject matter jurisdiction after it dismissed the case. This argument lacks merit. The trial court did have jurisdiction. The court's March 20, 2006 order expressly retained jurisdiction over post-judgment motions.
 {¶ 17} In Tyus v. Grande Pointe Health Community, Cuyahoga App. No. 88077, 2006-Ohio-2298, this court held: *Page 8 
 {¶ 18} "In State ex rel. Rice v. McGrath (1991), 62 Ohio St.3d 70, 71,577 N.E.2d 1100, the Supreme Court of Ohio ruled that a judge loses `authority to proceed in a matter when he unconditionally dismisses it.' In the instant case, the trial judge * * * explicitly * * * retain[ed] jurisdiction over all post-judgment motions. This order clothes the trial judge with sufficient jurisdiction to determine her own jurisdiction * * *."
 {¶ 19} In light of that ruling, it is clear that the trial court had subject matter jurisdiction over the motion to declare and enforce a charging lien and to issue contempt charges. Because the trial court had jurisdiction over post-judgment motions, appellant's argument is without merit.
 {¶ 20} Appellant also argues that the trial court did not have jurisdiction over her because she was not a party to the action. We do not agree. Appellant was the counsel of record, and the court has personal jurisdiction over her for purposes of enforcing its orders. SeeIn re Kinross (1992), 84 Ohio App.3d 335, 340, 616 N.E.2d 1128 (there is personal jurisdiction over attorneys practicing within that court). Also, a court has subject matter jurisdiction over the entire amount of the settlement, which would include attorney's fees. Id. at 338. Finally, appellant was subject to the court's contempt powers under R.C.2705.02(A) because she violated the court's orders to keep $65,000 in an IOLTA account.
 {¶ 21} Accordingly, appellant's first assignment of error is overruled. *Page 9 
 {¶ 22} "V. The trial court's contempt orders are invalid and void, and are against the manifest weight of the evidence."
 {¶ 23} Appellant argues that the court's order of contempt was against the manifest weight of the evidence. The standard in reviewing a trial court's findings in a civil contempt proceeding is abuse of discretion. "A trial court possesses broad discretion in contempt proceedings."Pavlik v. Barium Chemicals, Inc., Jefferson Appellate No. 02-JE-33,2004-Ohio-1726, citing Dozer v. Dozer (1993), 88 Ohio App.3d 296, 302,623 N.E.2d 1272. Absent a clear abuse of that discretion, the lower court's decision should not be reversed. Mobberly v. Hendricks (1994),98 Ohio App.3d 839, 845, 649 N.E.2d 1247. *Page 10 
 {¶ 24} The Ohio Supreme Court has explained as follows:
 {¶ 25} `"An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of will, of a determination, made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias.'" Id. at 845-846, quoting Huffman v. Hair Surgeons, Inc. (1985),19 Ohio St.3d 83, 87, 482 N.E.2d 1248. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 50 OBR 481, 450 N.E.2d 1140.
 {¶ 26} Appellant was held in contempt under R.C. 2705.02(A) for not complying with the court's order regarding the disbursement of funds and under R.C. 2705.02(B) for misbehavior in the "performance of her duties as an officer of the court * * *." "Civil contempt sanctions are designed to coerce compliance with the underlying order or to compensate the complainant for loss sustained by the contemptor's disobedience."Szymczak v. Szymczak (2000), 136 Ohio App.3d 706, 713, 737 N.E.2d 980.
 {¶ 27} The court did not abuse its discretion when it issued its order of civil contempt. Appellant was ordered to transmit funds to the plaintiff so that appellee *Page 11 
D C could receive its attorney's fees. D C has not received any fees because appellant disobeyed the court's orders on several occasions. According to Tyus, appellant sent her a second check in June or July 2006. In return, Tyus sent appellant an estimated $50,000 attorney fee check.
 {¶ 28} Appellant repeatedly argues that she did not violate court orders because she disbursed the funds between the time that D C withdrew its motion to declare and enforce the charging lien and refiled that motion along with a motion to intervene. This argument fails. Appellant knew there was still an outstanding dispute regarding fees and that the court's order prohibited her from transmitting funds until the court ruled on the dispute. The court had yet to rule on the dispute, regardless of D C's motion to withdrawal, so even if appellant had issued a check to Tyus between the time D C withdrew its motion and then refiled the motion, appellant was not following the court's order to keep the funds until the fee dispute was ruled upon by the court. Therefore, it was clearly within the court's discretion to find her in contempt.
 {¶ 29} Finally, appellant contends that she cannot comply with the court's orders because she has already disbursed the money to Tyus. In the final show cause hearing, although appellant testified that Tyus did not pay her any attorney's fees, Tyus informed the court that she had paid appellant approximately $50,000 in fees. At that hearing, appellant refused to answer several questions; therefore, the trial court found her in contempt and remanded her to custody. *Page 12 
 {¶ 30} As we discussed above, the trial court correctly held appellant in contempt; therefore we affirm the contempt finding. However, we find that there are disputes remaining regarding which parties are still owed money and whether appellant is retaining funds that do not belong to her.
 {¶ 31} The September 21, 2006 journal entry orders appellant to transmit to Collier-Williams a check for $60,443, "which represents $10,000 in additional settlement proceeds to plaintiff Tyus and $50,443 in atty fess (sic) to the firm of Dickson and Campbell * * *." We find that this amount may exceed the amount that appellant has in her possession. Appellant and Tyus agree that appellant sent Tyus a second check for $65,000; however, Tyus also claims she sent a check for $50,000 back to appellant for attorney's fees. From these numbers, it appears that appellant could have $50,000, at most, in her possession. Finally, D C alleges that it has not received any funds in payment of attorney's fees. It is clear that disputes remain regarding what amount, if any, remains with appellant and what amount is still owed to D C.
 {¶ 32} In view of these disputes, we reverse and remand for a hearing to determine which parties are owed money and what amount, if any, appellant is retaining in funds that do not belong to her. Accordingly, appellant's fifth assignment of error is overruled in part and sustained in part.
Judgment affirmed in part and reversed and remanded in part.
It is ordered that appellant and appellee share the costs herein taxed. *Page 13 
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, J., and KENNETH A. ROCCO, J., CONCUR
 APPENDIX A
Appellant's remaining assignments of error:
"II. The trial court erred in granting a post-judgment motion for attorney fees where attorney fees were not included within a count in the complaint."
"III. The trial court lacked subject matter jurisdiction over the issue of attorney fee distribution where the funds were properly distributed after the order expired."
"IV. The trial court erred in suggesting to intervenor and then granting the post-judgment motion to intervene."
"VI. The trial court violated Joy Marshall's due process rights."
"VII. The trial court erred in determining that intervenors had a valid charging lien."
[1] Appellant initially filed two appeals (Nos. 88763 and 88780), which were consolidated on October 24, 2006. Appeal No. 88763 addressed the trial court's August 15, 2006 judgment entry, while appeal No. 88780 addressed the civil contempt of court order. On March 12, 2007, this court dismissed appeal No. 88763 for failure to file a timely notice of appeal.
[2] On February 18, 2006, appellant and Plaintiff Tyus executed a contingent fee agreement. The fee would be one-third of settlement proceeds procured by Marshall.
[3] The contingency fee agreement between Plaintiff Tyus and D C provided that D C would receive 33-1/3 percent fee for pre-suit work and 40 percent fee for work completed during trial. D C also advanced $2,953.70 in expenses. *Page 1