[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Marshall,* Slip Opinion No. 2014-Ohio-4815.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4815

DISCIPLINARY COUNSEL *v.* MARSHALL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Marshall,* Slip Opinion No. 2014-Ohio-4815.]**

*Attorneys—Misconduct—Conduct involving dishonesty or misrepresentation—Conduct adversely reflecting on fitness to practice law—Conduct prejudicial to the administration of justice—False statements concerning the integrity of a judge—Two-year suspension, partially stayed.*

(No. 2013-0924—Submitted October 22, 2013—Decided November 6, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-003.

_____

**Per Curiam**.

{¶ 1}  Respondent, Joy Lenore Marshall of Columbus, Ohio, Attorney Registration No. 0073585, was admitted to the practice of law in Ohio in 2002.[1]

_____

[1] Marshall was admitted to the practice of law in Wisconsin in 2001.

**{¶ 2}** In January 2012, relator, disciplinary counsel, submitted a complaint charging Marshall with professional misconduct arising from her conduct during postjudgment proceedings initiated by a personal-injury client's former counsel to establish and collect the value of their services pursuant to the doctrine of quantum meruit. Relator alleged that Marshall engaged in dishonesty, fraud, deceit, or misrepresentation and conduct that was both prejudicial to the administration of justice and adversely reflected on her fitness to practice law. Relator further alleged that Marshall charged a clearly illegal or excessive fee, failed to disclose potential conflicts of interest before accepting the client's employment, and knowingly or recklessly made false statements concerning the integrity of the presiding judge.

**{¶ 3}** A probable-cause panel of the Board of Commissioners on Grievances and Discipline found that probable cause existed to file a formal complaint and certified relator's complaint to the board.

**{¶ 4}** After conducting a hearing on the matter, a separate panel issued a report finding that relator had proved by clear and convincing evidence that Marshall had committed most, but not all, of the violations and recommended that the allegations related to the amount of Marshall's fee and the failure to disclose potential conflicts of interest be dismissed. Based on the proven misconduct, the panel recommended that Marshall be suspended from the practice of law in Ohio for two years, with the second year stayed on the conditions that she engage in no further misconduct and pay her client's former counsel an amount to be determined by the Cuyahoga County Court of Common Pleas. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

**{¶ 5}** Marshall objects to the board's findings of misconduct, arguing that she was honest and acted within the bounds of the law while zealously representing her client and defending her attorney fees. She also argues that she had a reasonable basis for making allegations that the trial judge exhibited an

improper racial or gender bias against her. She further contends that the board's recommended sanction is too harsh.

{¶ 6} For the reasons that follow, we overrule Marshall's objections, adopt the board's report, and suspend Marshall from the practice of law in Ohio for two years, with the second year stayed on conditions.

### The Board's Findings of Fact and Misconduct

*Agreement to Represent Bessie Tyus and Settlement of Her Case*

{¶ 7} In late 2005 or early 2006, Kimberly Tyus contacted Marshall about a personal-injury complaint that attorney William P. Campbell had filed on behalf of her mother, Bessie Tyus, in August 2005. The case was assigned to Cuyahoga County Court of Common Pleas Judge Nancy M. Russo. Kimberly, who served as her mother's attorney in fact, indicated that her family was not satisfied with the quality of Campbell's representation in her mother's legal matter. Marshall initially advised Kimberly that she should remain with her existing counsel, whose fee contract entitled him to 40 percent of any recovery once a complaint had been filed.[2] But a few days later, the Tyus family advised Marshall that they had decided to retain new counsel, and she agreed to take the case. Kimberly sent Campbell a letter terminating his representation.

{¶ 8} Marshall advised Kimberly that former counsel could claim payment for the reasonable value of the services he provided from November 2004 to February 2006 pursuant to the doctrine of quantum meruit. She instructed Kimberly to request a statement from Campbell setting forth his claim for the services rendered and costs advanced on Tyus's behalf.

{¶ 9} Kimberly received a settlement memorandum from Campbell's office that detailed $2,943.70 in expenses advanced by his firm, but it made no

---

[2] The contingent-fee contract was with Shiff & Dickson, L.L.C. William P. Campbell was the attorney primarily responsible for the Tyus representation. That firm later became Dickson & Campbell, L.L.C.

mention of any other amounts claimed to be due to the firm. She faxed the document to Marshall and indicated that she did not believe that any additional fees were owed. On February 18, 2006, Kimberly signed a contingent-fee contract providing that Marshall's fee would be one-third of any recovery, plus costs.

{¶ 10} In response to the Tyus's decision to sever their attorney-client relationship, Campbell sent a February 20, 2006 letter to Kimberly, confirming the termination of his services. He advised her that he intended to assert an attorney's lien on any settlement based on his contingent-fee agreement, or alternatively on the basis of quantum meruit, though he did not state the value of his claim at that time. The following day, he moved to withdraw as counsel, and advised the court that his firm was asserting an attorney's lien for "fees and costs advanced." Once again, the only value stated was the $2,943.70 in costs advanced by his firm.

{¶ 11} Campbell later sent a letter directly to Marshall stating that his firm was asserting a lien for $2,943.70 in costs *and* fees based on the doctrine of quantum meruit. Marshall acknowledged receipt of that letter, but testified that she believed that she had no obligation to protect Campbell's fee in negotiating the resolution of Tyus's case. Nor did she believe that she had any obligation to negotiate a split of *her* attorney fee with Campbell.

{¶ 12} Marshall negotiated with the defendants' counsel and, by March 19, 2006—just one month after commencing her representation—settled Tyus's claim for $150,000. The court journalized an entry dismissing the case with prejudice, but expressly retained jurisdiction over all postjudgment motions.

*Former Counsel's Charging Lien and Motion to Enforce It*

{¶ 13} Marshall did not call Campbell to discuss their fees as he had requested, nor did she advise her client to consult with independent counsel about her obligation to pay attorney fees to herself and Campbell. On March 27, 2006,

4

Campbell and his co-counsel, M. David Smith, of Friedman, Domiano & Smith, L.P.A. (collectively, "former counsel"), filed a notice of charging lien with the court and moved to enforce it. For the first time, former counsel alleged that they had performed 95 percent of the work on the Tyus matter and demanded a fee of $47,500 plus reimbursement of the costs advanced by their firm.

{¶ 14} In light of the pending fee dispute, the defendants in the underlying personal-injury action gave a check for the settlement proceeds to the court. The judge placed the check in a bowl on her desk and set a hearing date for former counsel's motion. Marshall sought a writ of prohibition in the Eighth District Court of Appeals to prohibit Judge Russo from ruling on former counsel's motion, but her efforts were not successful.[3] *Tyus v. Grande Pointe Health Community*, 8th Dist. Cuyahoga No. 88077, 2006-Ohio-2298.

*Hearing on Former Counsel's Motion*

{¶ 15} Marshall was more than 30 minutes late for the April 28, 2006 hearing on former counsel's motion. Judge Russo explained that she had not been properly served with Marshall's petition for the writ and that she therefore retained jurisdiction to hear former counsel's motion. Attorney Campbell testified about the work his firm had performed on the Tyus case and advised the court that, in order to simplify the division of fees between the two attorneys, he would agree to calculate his fee based on a percentage of a one-third contingent fee, as specified in Marshall's contract, rather than the 40 percent specified in his own. He argued that his firm had completed 95 percent of the work leading to settlement of the Tyus matter, had advanced $2,943.70 in costs, and was therefore entitled to receive $50,443.70 of the settlement proceeds.

{¶ 16} Before Edward Parks, an attorney assisting Marshall, finished cross-examining Campbell, and before Marshall had the opportunity to present

---

[3] The court of appeals denied the applications for a writ of prohibition for failure to properly caption it, but also noted that they would fail on the merits.

evidence of the work she had performed in the Tyus matter, Judge Russo advised the parties (off the record) that the hearing would be continued.

*Judge Russo Entrusts the Settlement Check to Marshall*

{¶ 17} At the conclusion of the April 28, hearing Judge Russo gave the $150,000 settlement check to Marshall. Off the record, she ordered her not to disburse more than $85,000 of the proceeds to her client and to hold the remaining funds in trust, pending resolution of the attorney-fee dispute. The judge gave Marshall a copy of the proposed judgment entry memorializing those instructions at the conclusion of the hearing, but the entry was not journalized until June 12, 2006.[4]

{¶ 18} Marshall established a separate trust account for Tyus's benefit and deposited the settlement funds on May 1, 2006. Four days later, she wrote herself a check for $1,127.66 to reimburse her costs and distributed $63,352.34 to her client by wire, at a cost of $20. On May 31, 2006, $241.15 in interest was transferred from the account, presumably to the state treasurer for the Legal Aid Fund, pursuant to R.C. 4705.09(B), leaving a balance of $85,500 in the trust account. About that time, Kimberly sent Marshall a $25,000 cashier's check from Tyus's share of the settlement proceeds as a "gift." Although there was conflicting evidence regarding the disposition of those funds, the board found that Marshall accepted the money and applied it toward her fee.

{¶ 19} In May 2006, Marshall engaged in a multipronged effort to avoid the enforcement of former counsel's charging lien. She moved to dismiss former counsel's motion and sought writs of prohibition from the court of appeals (for a second time) and from this court, but her efforts were unsuccessful.

---

[4] The entry provided: "Pursuant to discussions with all counsel, the court has transmitted the check tendered to the court, as settlement in this matter, in the amount of $150,00[0], to current counsel for plaintiff, Ms. Joy Marshall. The court orders that Ms. Marshall may distribute no more than $85,000 of the proceeds to the plaintiffs at this time. The remaining funds must be maintained in the proper accounts pending the court's ruling on the outstanding dispute regarding the lien on atty fees filed by plaintiff[']s prior counsel."

*Marshall Distributes the Settlement Proceeds*

*Before the Court Resolves the Fee Dispute and Seeks to Disqualify Judge Russo*

**{¶ 20}** On June 22, 2006, Judge Russo issued an entry stating that former counsel had withdrawn the pending motion to enforce their charging lien and advised the court that they intended to intervene in the proceeding to enforce their lien.

**{¶ 21}** Marshall interpreted this entry as an opportunity to distribute the funds that she had previously been ordered to hold in trust pending the resolution of the attorney-fee dispute. She distributed an additional $60,006.50 to Tyus and paid herself $25,493.50 (in addition to the $25,000 she had already received from the client) in attorney fees). On June 26, 2006—the day that former counsel moved to intervene—the final interest credit of $167.48 was transferred, and Marshall closed the Tyus trust account.

**{¶ 22}** The following month, Marshall filed an affidavit of disqualification in this court, alleging that Judge Russo had engaged in a pattern of biased conduct against her and should therefore be disqualified from presiding over the postjudgment motions in Tyus matter. Finding no evidence of bias or prejudice at that time, Chief Justice Moyer denied the affidavit of disqualification and two motions for reconsideration.

**{¶ 23}** Marshall continued her efforts to prevent a ruling on former counsel's motion, filing a second complaint in prohibition followed by motions for injunctive relief and an emergency peremptory writ in this court; Judge Russo opposed them all. When these actions proved unsuccessful, we granted Judge Russo's motion for sanctions and awarded her $327.42 in expenses.

**{¶ 24}** The board found that Marshall's distribution of the settlement funds in contravention of the court's orders violated DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting a lawyer from engaging in conduct

that is prejudicial to the administration of justice), and 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

*Marshall Withdraws as Counsel and the*

*Hearing on Former Counsel's Motion Resumes in Her Absence*

**{¶ 25}** In anticipation of the hearing on former counsel's motion resuming, attorney Cassandra Collier-Williams entered an appearance as counsel for Tyus. On the morning of the hearing, Marshall filed a counterclaim on Tyus's behalf and moved to withdraw as counsel.[5] Following Marshall's withdrawal as counsel, Judge Russo took the unusual step of ordering her to leave the courtroom, and Marshall complied.

**{¶ 26}** Collier-Williams declined to resume Campbell's cross-examination and advised the judge that Tyus no longer intended to dispute former counsel's fees. She stated that Tyus wanted only to ensure that her attorney-fee obligation would not exceed the $65,000 that the court had ordered Marshall to hold in trust.

**{¶ 27}** On the record, Judge Russo stated that Marshall was not defending her right to the fees and had withdrawn her opposition to former counsel's motion. She therefore declared the motion unopposed, granted former counsel a judgment of $50,443, ordered Marshall to retain $4,557 for her fees, and discussed the best method to distribute the settlement. After reaching this decision, the judge sent Campbell out in the hallway to bring Marshall in, but he was unable to find her. When Marshall returned to the courtroom on her own, the hearing had ended.

---

[5]Marshall's motion to withdraw was formally granted on August 16, 2006, and the counterclaim was stricken on August 18, 2006, on the ground that Marshall had filed it without the consent of Tyus or her new counsel and because it was "an improper pleading in a post-dispositive enforcement of lien action."

**{¶ 28}** Marshall received a copy of the court's August 15, 2006 order directing her to retain $4,557 for her fees and transfer the remaining $60,443 that should have remained in her trust account to Collier-Williams, who was to distribute $50,443 to former counsel and the remaining $10,000 to the client. The appellate court dismissed her appeal as untimely, and we declined to accept jurisdiction.[6] *Tyus v. Grand Pointe Health Community*, 8th Dist. Cuyahoga No. 88763; *discretionary appeal not accepted,* 115 Ohio St.3d 1420, 2007-Ohio-5056, 874 N.E.2d 537.

*Former Counsel's Separate Action to Enforce Judgment Against Marshall*

**{¶ 29}** On June 19, 2006, former counsel filed a civil action in the Cuyahoga County Court of Common Pleas in which they alleged that Marshall had engaged in fraud, conversion/theft, embezzlement, and tortious interference with a business relationship, and they sought both compensatory and punitive damages. *Dickson & Campbell, L.L.C. v. Marshall*, Cuyahoga C.P. No. CV-07-627533. Marshall counterclaimed for fraud, interference with contractual relations, libel, abuse of process, and intentional and negligent infliction of emotional distress.

**{¶ 30}** In December 2007, Judge Timothy McGinty granted summary judgment in former counsel's favor and awarded them a judgment of $50,443— the same amount Judge Russo had awarded them in the Tyus matter. Marshall appealed, but the appeal was dismissed for lack of a final, appealable order because her counterclaims and former counsel's tortuous-interference claims remained pending. *Dickson & Campbell, L.L.C. v. Marshall*, 8th Dist. Cuyahoga No. 90963, 2010-Ohio-2878, ¶ 9-13. The matter was remanded to the trial court

---

[6] Even if Marshall had timely filed her notice of appeal of that judgment, however, it does not appear that she would had standing to pursue it because, although she was aggrieved by the judgment, she was not a party to the action and had not moved to intervene in the proceeding. Civ.R. 24. *See*, *e.g., State ex rel. Jones v. Wilson*, 48 Ohio St.2d 349, 358 N.E.2d 605 (1976); *Chase Bank USA, N.A. v. Jacobs*, 10th Dist. Franklin No. 11AP-343, 2012-Ohio-64, ¶ 6.

and remained pending when this disciplinary proceeding was orally argued to this court.

*Marshall's Obligation to Former Counsel Declared*

*Nondischargeable in Bankruptcy*

{¶ 31} In April 2008, Marshall petitioned for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio, though her filing was later converted to a Chapter 7 proceeding. At her disciplinary hearing, Marshall offered conflicting testimony regarding her reasons for seeking bankruptcy protection. She testified that although she initially filed for a Chapter 13 reorganization, her goal was to discharge her debts, including the judgment that Judge McGinty awarded against her. But she later denied that she had sought to discharge the judgment, implying that she had used the bankruptcy only as a means of staying execution of the judgment during her appeal, and emphasizing that she had initially intended to pay at least a portion of her debts through the reorganization.

{¶ 32} Former counsel filed an adversary proceeding in the bankruptcy court contesting the discharge of the judgment they received against Marshall in their separate civil action against Marshall. The court found that Marshall had caused willful and malicious injury to former counsel by disbursing the escrowed settlement funds in contravention of the trial court's order and rejected her theory that former counsel no longer had an interest in the settlement funds she held in trust once they withdrew their initial motion to enforce the charging lien. *Dickson & Campbell, L.L.C. v. Marshall* (*In re Marshall*), No. 08-53659, Adv. Pro. No. 08-02335 (Bankr.S.D.Ohio, Apr. 1, 2010). Therefore, the court declared that former counsel's judgment against Marshall was not dischargeable in bankruptcy. The United States District Court for the Southern Division of Ohio affirmed the bankruptcy court's holding. *Marshall v. Dickson & Campbell, L.L.C.* (*In re Marshall* ), 2011 WL 249500 (S.D.Ohio).

*Marshall Is Arrested for Tardiness at Her Contempt Hearing*

**{¶ 33}** On August 21, 2006, Judge Russo ordered Marshall to appear and show cause why she should not be held in contempt for her failure to comply with the August 15, 2006 order, and to produce copies of her trust-account records for the court's inspection. The entry set the contempt hearing for a date and time certain and clearly stated that if Marshall failed to appear, a bench warrant would be issued for her arrest. Although Marshall received that notice, she arrived at least 70 minutes late for the hearing and was arrested, though she was released on a $5,000 bond later that day. The only explanation that Marshall offered for her tardiness was that she had been unable to leave Columbus early enough to arrive on time.

**{¶ 34}** The board found that Marshall's tardiness at this hearing—not by a few minutes, but by well over an hour—without a reasonable excuse adversely reflected on her fitness to practice law and was prejudicial to the administration of justice in violation of DR 1-102(A)(5) and (6).

*Contempt for Disobedience, Misappropriation, and Failure to Disburse*

*Settlement Proceeds in Accordance with Court's Order*

**{¶ 35}** Judge Russo issued a second entry that ordered Marshall to appear and show cause why she should not be held in contempt for her failure to comply with the court's prior orders, and to produce copies of her records of her client trust account pertaining to the Tyus matter for the court's inspection. At the September 21, 2006 hearing, attorney Edward Wade served as Marshall's counsel and attempted to argue that Marshall had not been given an opportunity to defend her interest in the funds escrowed for Tyus's attorney fees at the August 15, 2006 hearing. Judge Russo refused to hear that argument. The judge characterized Marshall's actions at the August 15 hearing as a voluntary withdrawal of counsel followed by a voluntary departure from the courtroom. Having reviewed the

transcript of that hearing, the board correctly found that Marshall's departure from the courtroom was anything but voluntary.

{¶ 36} Although Wade attempted to elicit testimony from Marshall regarding her fees, Judge Russo cut him short and instructed counsel to focus his direct examination on the three issues raised in the contempt citation. Judge Russo then proceeded to directly question Marshall about what happened to the money. When Marshall would not answer the judge's questions, the judge held her in contempt and ordered her jailed without bond based on her disobedience at the hearing and her failure to disburse the settlement proceeds in accordance with the court's August 15 order. The board found that Marshall's incomplete and misleading answers to direct questions posed by Judge Russo at this hearing violated DR 1-102(A)(4).

*Appeal, Remand, and a Second Contempt Finding*

{¶ 37} Marshall appealed the court's contempt finding to the Eighth District Court of Appeals, which granted her request for release from jail on bond pending appeal. In December 2007, the court of appeals affirmed the finding of contempt but remanded the case to the trial court for further proceedings to resolve disputes regarding which parties were still owed money and whether Marshall retained any funds that did not belong to her. *In re Contempt of Marshall*, 8th Dist. Cuyahoga No. 88780, 2007-Ohio-6639, ¶ 30-32.

{¶ 38} On remand, Judge Russo set Marshall's show-cause hearing to resume on January 9, 2008. She also ordered Marshall to produce all relevant financial records and all records of her time, hours, and activity on the Tyus matter at that hearing. At that hearing, Marshall informed the court that she had been unable to locate her trust-account records, but erroneously claimed that the content of those records had been read into the record at an earlier hearing. Judge Russo gave Marshall another opportunity to explain what had happened to the money, but when she did not receive a straightforward answer, she found

Marshall in contempt for a second time and sentenced her to three days in the county jail.

{¶ 39} Marshall filed a second affidavit with Chief Justice Moyer seeking to disqualify Judge Russo from the case. The affidavit was dismissed as moot, however, because Judge Russo recused herself from the case.

{¶ 40} The board found that Marshall's failure to abide by the court's order to produce her trust-account and financial records at the January 9, 2008 hearing, in light of her testimony at the disciplinary hearing that she had done nothing to prepare for the hearing and was not even sure that she had previously produced the records, violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

*Appeal of Second Contempt:*

*Allegations of Judicial Race and Gender Bias*

{¶ 41} In February 2008, Marshall timely appealed Judge Russo's second finding of contempt. *In re Contempt of Marshall*, 8th Dist. Cuyahoga No. CA-08-091011. In her brief, Marshall alleged that Judge Russo's rulings against her had been influenced by improper racial and gender bias. She admitted at her disciplinary hearing, however, that she had conducted no research to determine the racial makeup of Campbell's law firm. She could not cite any improper racial or gender-based remarks by Judge Russo and also admitted that the bases for her allegations were the judge's ruling against her on the division of attorney fees and jailing her for contempt.

{¶ 42} Although the board stated that it understood Marshall's frustration with Judge Russo, it found that her allegations of racial and gender bias against the judge were unsubstantiated and unreasonable and therefore violated

Prof.Cond.R. 8.2(a) (prohibiting a lawyer from knowingly or recklessly making false statements concerning the integrity of a judicial officer), 8.4(d), and 8.4(h).

*The Board Recommends that We Dismiss Two Alleged Violations*

{¶ 43} In addition to the violations found by the board, relator's complaint charged Marshall with violations of DR 2-106(A) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee) and 5-101(A)(1) (requiring a lawyer to disclose potential conflicts of interest before accepting employment that is likely to compromise the lawyer's ability to exercise independent judgment on a client's behalf), but the board recommends that we dismiss them.

{¶ 44} The alleged violation of DR 2-106(A) relates to allegations that Marshall charged Tyus $790.87 in costs and expenses that were incurred after Tyus's personal-injury matter was settled, in order to defend Marshall's one-third contingent fee. Noting that the plain language of the rule prohibits a lawyer from entering into an agreement for, charging, or collecting "an illegal or clearly excessive *fee*" (emphasis added), the board found that it does not apply to costs or expenses.

{¶ 45} Relator also alleged that Marshall violated DR 5-101(A)(1) by failing to disclose a potential conflict of interest to Kimberly before having her execute a settlement agreement that set forth the distribution of the settlement proceeds and provided that Tyus would be responsible for all outstanding liens against the settlement proceeds, including any claims "found to be valid and owing any previous attorney." The agreement further provided, "As of the date of this signature there are no known valid and existing liens." The board found that this allegation was not proven by clear and convincing evidence, because the agreement conformed to *Fox & Assocs. Co., L.P.A. v. Purdon*, 44 Ohio St.3d 69, 72, 541 N.E.2d 448 (1989), in which we held that an attorney discharged by a

14

client is entitled to recover *from the client* the reasonable value of services rendered prior to the discharge on the basis of quantum meruit.

{¶ 46} Therefore, the board recommends that we dismiss the alleged violations of DR 2-106(A) and 5-101(A)(1).

### Sanction Recommended by the Board

{¶ 47} Based on findings that Marshall has engaged in conduct that violated DR 1-102(A)(4), 1-102(A)(5), and 1-102(A)(6) and Prof.Cond.R. 8.2(a), 8.4(d), and 8.4(h), the board recommends that we suspend Marshall for two years, with the second year stayed on the conditions that she engage in no further misconduct and make restitution to former counsel in an amount to be determined by the Cuyahoga County Court of Common Pleas in the underlying personal-injury action pursuant to the remand from the court of appeals in *In re Contempt of Marshall*, 8th Dist. Cuyahoga No. 88780, 2007-Ohio-6639, ¶ 30.

### Marshall's Objections to Findings of Fact and Misconduct

{¶ 48} Marshall objects to the board's findings that she violated DR 1-102(A)(4), Prof.Cond.R. 8.2(a), and DR 1-102(A)(5) and (A)(6).

*Marshall Engaged in Conduct Involving Dishonesty,*

*Fraud, Deceit, or Misrepresentation*

{¶ 49} We first address Marshall's objection to the board's finding that she engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of DR-102(A)(4).[7] Marshall contends that she was at all times honest with the court as she attempted to protect her right to due process in the defense of her fees in the Tyus matter.

{¶ 50} In a disciplinary proceeding, the relator bears the burden of proving an attorney's misconduct "by clear and convincing evidence." Gov.Bar

---

[7] Marshall's objection mistakenly states that she did not violate DR 1-102(A)(2), which prohibits a lawyer from circumventing disciplinary rules through the acts of another, though her argument clearly addresses the board's finding that she engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, which is prohibited by DR 1-102(A)(4).

R. V(6)(J); *Disciplinary Counsel v. Jackson*, 81 Ohio St.3d 308, 310, 691 N.E.2d 262. "Clear and convincing evidence" has been defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 51} Here, the board found that Marshall violated DR 1-102(A)(4) in two ways. First, she acted dishonestly and in perpetration of a fraud by distributing $65,000 of the Tyus settlement proceeds in violation of the court's orders. While the board recognized that Marshall *believed* that she was entitled to take her fee out of the Tyus settlement proceeds once former counsel dismissed their motion to enforce their charging lien, the board found that her interpretation of the court's orders was unreasonable. Instead, the board found that the court's order for Marshall to hold $65,000 of the proceeds pending the resolution of former counsel's claim for attorney fees was not supplanted by the court's subsequent acknowledgment that former counsel had dismissed their motion to enforce their charging lien. Not only did that order indicate that the fee dispute remained unresolved and that former counsel would move to intervene in the proceeding, but more importantly, it did not mention the funds Marshall held in trust, let alone authorize her to distribute them. Marshall does not dispute these findings.

{¶ 52} The board also determined that Marshall made incomplete and misleading statements to the court about her distribution of the settlement proceeds—including misrepresentations to the effect that she had not taken a fee in the Tyus matter when she knew that she had. Marshall objects to this finding of misconduct, arguing that her claim that she did not "take" any fee is not false because the court's phrasing implies some level of wrongdoing, and she maintains

that she rightfully "collected" her fee in accordance with her contingent-fee-agreement. She also argues that her statements in court could not have misled the judge because, in a separate prohibition proceeding in which the judge was a party, she stated that the funds had already been disbursed.

{¶ 53} The transcript of the hearing shows that Judge Russo sought information regarding the whereabouts of the settlement proceeds that she had ordered Marshall to retain in trust pending resolution of the attorney-fee dispute. Marshall refused to answer her questions and argued that the court had no personal jurisdiction over her. When the judge insisted that she reveal the whereabouts of the money, Marshall responded, "The client—no, the client has received the money. * * * I've transmitted all the money to the client * * *." And when asked, "How much did you take in fees Ms. Marshall?" she replied, "I didn't take anything in fees."

{¶ 54} Marshall's testimony at her disciplinary hearing clearly and convincingly demonstrates that these statements were false because Marshall admitted that she did not disburse the entire $150,000 to her client and that she received $50,000 in fees (a $25,000 check from the client and a $25,493.50 check issued to "Cash" from her trust account), plus $1,127.66 as reimbursement for her expenses. Moreover, the panel heard and rejected Marshall's testimony that she sought to distinguish between the judge's inquiry as to whether she "took" a fee, which she believed implied a measure of wrongdoing, and her claim that she "collected" her in accordance with her contingent-fee agreement. We defer to that credibility determination because the panel members saw and heard the witnesses firsthand. *See Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24. And we now reject Marshall's claims that her failure to answer and her incomplete answers to the judge's questions were necessary to make a record for her defense or that they were somehow excusable because she had previously disclosed the whereabouts of the money to the judge

in a separate prohibition action. The better practice would have been for Marshall to answer Judge Russo's questions directly and then seek to explain her actions.

{¶ 55} Because we find that clear and convincing evidence supports the board's finding that Marshall violated DR 1-102(A)(4)—both by distributing the settlement proceeds in contravention of the court's orders and by making false and misleading statements at her contempt hearing—we overrule Marshall's objection and adopt the board's findings of fact and misconduct.

*Marshall Knowingly or Recklessly Made False Statements*

*Concerning the Integrity of a Judicial Officer*

{¶ 56} Marshall objects to the board's finding that she knowingly or recklessly made false statements concerning the integrity of a judicial officer in violation of Prof.Cond.R. 8.2(a). Marshall cites a number of instances in which she believes that the judge failed to comply with the law to the detriment of Marshall and her client. She therefore contends that the allegations of bias that she raised against the judge were justified and necessary to protect her property interest in her attorney fees. But even if there were some merit to those allegations, it would not excuse Marshall's failure to abide by the rules governing our profession. As it is often said, two wrongs do not make a right.

{¶ 57} The board agreed with Marshall's argument, in part, as it expressly found that Marshall was within her rights and ethical obligations to raise the issue of bias in her affidavits of disqualification. Consequently, the board made no finding of misconduct with respect to those filings.

{¶ 58} However, the board did not look as favorably upon Marshall's allegations that Russo's rulings against her were motivated by an improper racial and/or gender bias. Marshall attempts to defend her allegations with an equal-protection argument, asserting that she and former counsel were similarly situated but that she was in a superior position to collect her fee, given that she completely performed her contractual obligations, while former counsel had given only

18

partial performance. The only other difference she perceived was that she was a black female, while former counsel were white males. Therefore, Marshall claims that her race and/or gender are the only logical explanation for Judge Russo's rulings against her. And comparing the adverse rulings against her to an employment-discrimination claim, she contends that these facts are sufficient to constitute a prima facie case of illegal racial or gender-based discrimination.

{¶ 59} In determining whether an attorney has knowingly or recklessly made false statements concerning the integrity of a judicial officer, we consider whether the attorney had a reasonable factual basis for making the statements. We apply an objective standard that looks to the nature of the statements and the context in which they were made and that considers what a reasonable attorney, in light of all his professional functions, would do in the same or similar circumstances. *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, ¶ 26. Applying this standard, we have held that "an attorney may be sanctioned for making accusations of judicial impropriety that a reasonable attorney would believe are false." *Id.* at ¶ 31. We are also cognizant of Chief Justice Moyer's explanation:

> Allegations of racial bias are among the most serious and damaging claims that can be directed at a judge, since such allegations, if true, would not only constitute a violation of the judge's oath of office and the Code of Judicial Conduct, see R.C. 3.23 [requiring judicial officers to swear "to administer justice without respect to persons, and faithfully and impartially to discharge and perform" all of the duties of their office] and Canon 3(B)(5) of the Code of Judicial Conduct [requiring a judge to

perform judicial duties without bias or prejudice],[8] but also would
strike at the very heart of the integrity of the judiciary.

*In re Disqualification of Cunningham*, 100 Ohio St.3d 1216, 2002-Ohio-7470,
798 N.E.2d 4, ¶ 2.

{¶ 60} Therefore, we find that a reasonable attorney would act with caution in deciding whether to raise issues of racial or gender bias against a judicial official and would proceed only if the attorney found clear evidence that such a bias existed.

{¶ 61} The board found that Marshall could point to no specific actions or race- or gender-based remarks by the judge that would support her allegations of bias and that her allegation of gender bias was unreasonable given that both she and the judge were females. Marshall also admitted that she conducted no research to determine the racial makeup of former counsel's firms and that she was unaware of anyone else who had similar experiences with the judge. Therefore, the board determined that Marshall's allegations of racial and gender bias lacked substantiation, were unreasonable, and violated Prof.Cond.R. 8.2(a) as well as Prof.Cond.R. 8.4(d) and 8.4(h).

{¶ 62} We find that clear and convincing evidence supports the board's findings of fact and determination that no reasonable attorney would have made racial- or gender-bias allegations based on the limited information available to Marshall at the time she filed her appellate brief. On the facts before us, it appears that any bias that Judge Russo's may have exhibited against Marshall was likely to have been based not on her race or her gender but on her disobedience of

---

[8] Canon 3(B)(5) of the Code of Judicial Conduct has since been superseded by Jud.Cond.R. 2.2 and 2.3(A) and (B), which maintain the requirement that a judge perform the duties of judicial office fairly and impartially and without bias or prejudice).

the court's prior orders, her extensive efforts disqualify the judge, and her concerted efforts to avoid a ruling on the merits of former counsel's claim.

{¶ 63} Accordingly, we find that Marshall had no reasonable factual basis for alleging that the rulings against her were the result of improper racial or gender discrimination. We overrule this objection, adopt the board's findings of fact, and find that Marshall's allegations of racial and gender bias against Judge Russo violated Prof.Cond.R. 8.2(a), 8.4(d), and 8.4(h).

*Marshall Engaged in Conduct that Was Prejudicial to the Administration of Justice and Adversely Reflected on Her Fitness to Practice Law*

{¶ 64} In her final challenge to the board's findings of misconduct, Marshall contends that she did not engage in conduct that was prejudicial to the administration of justice or that adversely reflected on her fitness to practice law, in violation of DR 1-102(A)(5) and (A)(6). Instead, she argues that she acted within the bounds of the law to zealously represent her client. She claims that she sought the administration of justice through the use of established precedent to the effect that the court's orders were invalid, expired, or unenforceable and that the court had no jurisdiction over the postjudgment proceedings because there was no dispute pending before it once former counsel had withdrawn their motion. But Marshall cites none of that precedent here.

{¶ 65} Moreover, the court of appeals rejected her argument that the trial court lacked jurisdiction to address former counsel's claim for fees, noting that the court had expressly retained jurisdiction over postjudgment motions in the case, that the court had jurisdiction over the entire amount of the settlement, and that the court had personal jurisdiction and contempt power over Marshall with regard to her practice in the court and her acceptance of the settlement proceeds pursuant to the court's order. *In re Contempt of Marshall*, 2007-Ohio-6639, ¶ 19-21. And this sentiment was echoed by the bankruptcy court and the United States District Court for the Southern District of Ohio, Eastern Division, in finding that

Marshall had willfully and maliciously caused injury to former counsel. *Dickson & Campbell, L.L.C. v. Marshall* (*In re Marshall*), No. 08-53659, Adv. Pro. No. 08-02335 (Bankr.S.D.Ohio, Apr. 1, 2010); *Marshall v. Dickson & Campbell, L.L.C.* (*In re Marshall*), 2011 WL 249500 (S.D.Ohio).

{¶ 66} Furthermore, the board's findings that Marshall violated DR 1-102(A)(5) and 1-102(A)(6) relate not only to her failure to abide by the court's order to maintain the disputed portion of the settlement funds in a trust account but also to her failure to timely appear at her first contempt hearing with no excuse. And in addition to these violations of DR 1-102(A)(5) and 1-102(A)(6), the board found, and we agree, that Marshall violated the corresponding provisions of Prof.Cond.R. 8.4(d) and (h) by failing to submit trust-account records that Judge Russo had ordered her to produce and making unfounded allegations of racial and gender bias against the judge.

{¶ 67} We find that relator has proven by clear and convincing evidence that Marshall has violated DR 1-102(A)(5) and 1-102(A)(6) and Prof.Cond.R. 8.4(d) and (h) as found by the board. We therefore overrule Marshall's third objection.

*We Adopt the Board's Findings of Misconduct*

{¶ 68} Having overruled each of Marshall's objections to the board's findings of fact and misconduct, we adopt the board's findings of fact and find that Marshall's conduct as described above violated DR 1-102(A)(4), 1-102(A)(5), and 1-102(A)(6) and Prof.Cond.R. 8.2(a), 8.4(d), and 8.4(h), as found by the board. We also dismiss alleged violations of DR 2-106(A) and 5-101(A)(1) as recommended by the board.

**Sanction**

{¶ 69} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio

St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 70} As aggravating factors, the board found that Marshall acted with a dishonest or selfish motive when she distributed the settlement funds in violation of the trial court's order and that she engaged in a pattern of misconduct involving multiple offenses—including the violation of multiple court orders and at least two findings of contempt. BCGD Proc.Reg. 10(B)(1)(b), (c), and (d). The board also found that Marshall's unsupported allegations of racial and gender bias caused harm to Judge Russo and the courts and that her plethora of filings aimed to prevent the judge from ruling on former counsel's motion likewise harmed the judicial system. However, the board declined to find that Marshall's conduct caused any harm to her client.

{¶ 71} The board further rejected relator's contention that Marshall had refused to acknowledge the wrongful nature of her conduct, stating that "[w]hile some of Respondent's conduct was based on her interpretation of the law, some of her conduct was clearly wrong, and she acknowledged that it was wrong at the hearing in this matter." And, perhaps most importantly, the board refused to find that Marshall's failure to make restitution was an aggravating factor. Neither Judge Russo's decision awarding former counsel attorney fees and costs of $50,443 nor the grant of summary judgment to former counsel in the separate enforcement proceeding is final.

{¶ 72} With regard to mitigating factors that weigh in favor of a less severe sanction, the board found that Marshall has no prior disciplinary record, has made full and free disclosure to relator, possesses a good character and reputation aside from the charged misconduct, and has had other sanctions

imposed for her misconduct because she has served actual jail time for her contempt of court. BCGD Proc.Reg. 10(B)(2)(a), (d), (e), and (f).

{¶ 73} In its prehearing brief, relator suggested that the appropriate sanction for Marshall's misconduct falls somewhere between a two-year suspension and an indefinite suspension. At the panel hearing, however, relator argued in favor of an indefinite suspension. Marshall, in contrast, argued that the matter should be dismissed or that she should be publicly reprimanded for her conduct or receive an entirely stayed suspension.

{¶ 74} After comparing Marshall's conduct to that of three other attorneys who have engaged in similar types of offenses for whom we have imposed sanctions ranging from a 12-month suspension to an indefinite suspension, the board recommends that we suspend Marshall for two years, with the second year stayed on conditions.

{¶ 75} Marshall objects to the board's recommended sanction, arguing that it is too severe. She contends that she did not willfully violate Judge Russo's orders and that her violations do not demonstrate an unwillingness to properly discharge her duties to the court, her clients, or the public. She once again asserts that she has not engaged in any deceptive practices and that neither her tardiness nor her failure to comply with Judge Russo's order to produce copies of her trust-account records should be considered a violations of the Disciplinary Rules. But we have already rejected these arguments and found that she committed the charged violations.

{¶ 76} Marshall also notes that this is the only complaint against her in her 12 years of practice, that she has submitted nine letters and the testimony of a subpoenaed common pleas court judge in support of her character and fitness to practice law, and that she has not caused harm to any client. Therefore, she contends that her misconduct warrants no more than a public reprimand. But she cites no precedent in support of her recommended sanction.

{¶ 77} We find that the cases cited by the board, *Disciplinary Counsel v. Simon-Seymour*, 131 Ohio St.3d 161, 2012-Ohio-114, 962 N.E.2d 309; *Disciplinary Counsel v. Stafford*, 131 Ohio St.3d 385, 2012-Ohio-909, 965 N.E.2d 971; and *Disciplinary Counsel v. Frost*, 122 Ohio St.3d 219, 2009-Ohio-2870, 909 N.E.2d 1271, present a reasonable framework from which to determine the appropriate sanction for Marshall's misconduct.

{¶ 78} In *Stafford*, we found that by filing an ex parte motion to amend a complaint based on specific grounds and then surreptitiously adding a defense that might otherwise have been waived, Stafford intentionally misled a trial court and engaged in inappropriate ex parte communications. He also made false allegations of judicial impropriety against a sitting judge in a court filing without taking any action to verify the truth of the statements and did not withdraw them after the falsity of the statements had been exposed. *Stafford* at ¶ 18, 23-24, 42-44, 56-57. For these and other offenses, we imposed a 12-month actual suspension for Stafford's misconduct. *Id*. at ¶ 58, 80.

{¶ 79} Marshall's conduct is more egregious than that of Stafford. In addition to making false statements impugning the integrity of a judge in a court filing, appearing more than one hour late at her own contempt hearing, failing to produce trust-account records in violation of a court order, and giving incomplete and misleading answers to a judge's questions while testifying as a witness, she also misappropriated substantial settlement proceeds by distributing them in violation of court orders.

{¶ 80} At the opposite end of the spectrum, in *Frost*, we indefinitely suspended an attorney who (1) falsely accused several common pleas court judges and a county prosecutor of corruption and bias in the execution of their official duties, (2) repeatedly leveled unfounded accusations of racial bias and other impropriety against a federal district court judge who had granted summary judgment against her clients in a race-discrimination case, and (3) filed a baseless

defamation suit against two lawyers who had been her opposing counsel in a sexual-harassment action. Marshall's misconduct is not as widespread or egregious as that of Frost, however, because it relates to her conduct in several related cases arising from a single matter. Frost, on the other hand, engaged in pattern of repeatedly raising unfounded corruption, discrimination, and other impropriety against multiple public officials in at least two separate matters, and filed a baseless defamation action against two lawyers who were her opposing counsel in a sexual-harassment action.

{¶ 81} And in *Simon-Seymour*, we adopted a consent-to-discipline agreement in which the parties stipulated that a two-year suspension with the final six months stayed on conditions was the appropriate sanction for an attorney who neglected a decedent's estate, collected a fee without obtaining the required approval from the probate court, misappropriated additional estate fees for her own purposes, and falsely represented to the probate court that she had satisfied certain estate obligations when she had not. *Simon-Seymour,* 131 Ohio St.3d 161, 2012-Ohio-114, 962 N.E.2d 971, at ¶ 3-4, 12. Simon-Seymour had also failed to maintain client ledgers detailing the funds held in her client trust account and failed to perform a monthly reconciliation of that account for several years. *Id.* at ¶ 5.

{¶ 82} Marshall's misconduct, while perhaps more egregious than Simon-Seymour's, did not cause harm or threaten to cause harm to her clients. And after reviewing the various motions and hearings that occurred in the underlying matters, the board expressed serious misgivings regarding the fact that Judge Russo denied Marshall the opportunity to have her counsel complete cross-examination of attorney Campbell as well as the opportunity to present evidence detailing the services she provided to the Tyus family. For that reason, the board declined relator's request that Marshall be required to make restitution of $50,443 to former counsel as a condition of a stayed suspension.

**{¶ 83}** Marshall argues, and the board and the court of appeals recognized, that Judge Russo's judgment determining the value of services that Marshall and opposing counsel provided to Tyus is not final. We share these concerns. From the record before us, it appears that Judge Russo's judgment allocating the attorney fees and ordering Marshall to remit the settlement proceeds to Collier-Williams, who was then ordered to pay $50,443 to former counsel, is not final and binding determination of Marshall's fee because she was neither a party to the action nor in privity with a party once her interests conflicted with those of Tyus. *See, e.g., Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943), paragraph one of the syllabus ("A final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them"), *overruled on other grounds*, *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus. Moreover, she was expressly order to leave the courtroom once she withdrew as counsel for Tyus. "The main legal thread which runs throughout the determination of the applicability of *res judicata*, inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense." *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 200-201, 443 N.E.2d 978 (1983), *superseded on other grounds by R.C. 2721.12*. Thus, to the extent that Marshall was neither a party to the proceeding nor given the opportunity to be heard, it would appear that the doctrine of res judicata would not preclude her from litigating these issues in one of the proceedings that remains pending below, since she has never had the opportunity to fully and fairly litigate them.

**{¶ 84}** Because the board accounted for this issue in recommending its sanction—which is not as severe as the sanction we imposed in *Simon-Seymour*—

we find that a two-year suspension, with the second year stayed on the conditions that Marshall commit no further misconduct and make full restitution (or make installment-payment arrangements that are satisfactory to relator) to William P. Campbell and M. David Smith in an amount to be determined by the Cuyahoga County Court of Common Pleas. Therefore, we overrule Marshall's final objection.

{¶ 85} Accordingly, Joy Lenore Marshall is suspended from the practice of law in Ohio for two years, with the second year stayed on the conditions that she commit no further misconduct and make full restitution to William P. Campbell and M. David Smith in an amount to be determined by the Cuyahoga County Court of Common Pleas in *Dickson & Campbell, L.L.C. v. Marshall*, Cuyahoga C.P. No. CV-07-627533. If Marshall does not comply with the terms of the stay, the stay will be revoked, and she will serve the full two-year suspension. Costs are taxed to Marshall.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, and KENNEDY, JJ., concur.

LANZINGER, J., concurs in judgment only.

FRENCH and O'NEILL, JJ., dissent and would impose suspension of two years with eighteen months stayed.

_____

Scott J. Drexel, Disciplinary Counsel, and Bruce Taylor Davis, Assistant Disciplinary Counsel, for relator.

Joy Lenore Marshall, pro se.

_____