[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Gold,* Slip Opinion No. 2018-Ohio-3238.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3238

DISCIPLINARY COUNSEL *v.* GOLD.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Gold,* Slip Opinion No. 2018-Ohio-3238.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including misappropriating client funds, engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, engaging in conduct that is prejudicial to the administration of justice, and engaging in conduct that adversely reflects on the lawyer's fitness to practice law—Two-year suspension, with second year stayed on conditions.*

(No. 2017-1411—Submitted January 24, 2018—Decided August 14, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-069.

_____

**Per Curiam.**

{¶ 1} Respondent, John Walter Gold, of Hinckley, Ohio, Attorney Registration No. 0078414, was admitted to the practice of law in Ohio in 2004.

**{¶ 2}** In a complaint certified to the Board of Professional Conduct on December 28, 2016, relator, disciplinary counsel, charged Gold with multiple violations of the Rules of Professional Conduct. The charges arose from Gold's efforts to collect more than $51,000 in unclaimed funds on behalf of a client. The allegations in the complaint included that Gold misappropriated those funds in violation of an agreed court order requiring him to hold them in his client trust account, that he engaged in a pattern of dishonesty and misrepresentation to conceal his misappropriation, and that he failed to maintain required records regarding his client trust account.

**{¶ 3}** The parties entered into stipulations in which Gold admitted to some misconduct and relator agreed to withdraw the remaining alleged violations. After a hearing, a panel of the board found that Gold engaged in the stipulated misconduct and dismissed the remaining allegations. The panel recommended that Gold be suspended from the practice of law for two years with the second year stayed on conditions and that upon reinstatement, he be required to serve a one-year period of monitored probation. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

**{¶ 4}** Gold objects to the board's recommended sanction and argues that based on his misconduct, the relevant aggravating and mitigating factors, and this court's precedent, the appropriate sanction for his misconduct is a two-year suspension stayed in its entirety.

**{¶ 5}** For the reasons that follow, we adopt the board's findings of fact and misconduct, overrule Gold's objection, and suspend him from the practice of law for two years with the second year stayed on the conditions recommended by the board.

**Misconduct**

{¶ 6} In May 2012, George Daher signed a contingent-fee contract retaining Gold to assist him in recovering $51,032.37 from the Ohio Department of Commerce's Division of Unclaimed Funds.

{¶ 7} In July 2012, Gold filed a complaint in the Cuyahoga County Court of Common Pleas seeking a declaratory judgment that Daher was entitled to the unclaimed funds. Because the source of the unclaimed funds was an insurance claim that preceded Daher's 2010 discharge of his debts in bankruptcy, Gold notified the bankruptcy trustee of the claim. The trustee filed a motion to intervene in the state-court proceeding to represent the bankruptcy estate's interest. Before the state court ruled on the motion to intervene, it granted partial summary judgment to Daher, declaring that he was entitled to make a full claim to the unclaimed funds. The state court later granted the trustee's motion to intervene.

{¶ 8} Meanwhile, the trustee also filed an adversarial complaint against both Daher and the state of Ohio in the reopened bankruptcy proceeding alleging that the funds belonged to the bankruptcy estate. Gold initially contested the complaint, arguing that the state court was the proper forum to determine the bankruptcy estate's interest in the unclaimed funds. But Gold and the trustee eventually signed an agreed order in the bankruptcy court, in which Gold agreed to accept $51,032.37 from the state of Ohio, to hold those funds in his client trust account until the bankruptcy court determined whether and how much of those funds were the property of the bankruptcy estate, and to deliver any funds found to be property of the estate to the trustee. Based on that order, the trustee dismissed his adversarial complaint in the bankruptcy court and all of his claims in the state-court case.

**{¶ 9}** On October 3, 2013, Gold deposited $53,161.72 into his client trust account, comprised of $51,161.72 of Daher's unclaimed funds[1] and money from another client. The next day, Gold disbursed $5,000 from that account without receiving the bankruptcy court's approval, misappropriating at least $2,869.03 of the unclaimed funds. During that month, he misappropriated and disbursed $8,869.03 of those funds without court approval. In November and December 2013, he misappropriated an additional $9,634.41. In March 2014, Gold gave Daher $2,000 of the disputed funds without receiving the court's approval and misappropriated another $6,536 of the funds.

**{¶ 10}** As Gold's misappropriations were occurring, the trustee filed a second adversarial complaint in the bankruptcy court, naming Gold and Daher as defendants and asking the court to determine the bankruptcy estate's interest in the funds. Despite having agreed that the bankruptcy court was the proper forum to decide that issue, Gold moved the court to close Daher's bankruptcy case and to dismiss the adversarial complaint. He also argued that the bankruptcy trustee's claims were barred because they were not raised in the state-court proceeding. And contrary to his written contingent-fee contract with Daher, he claimed that he was entitled to an hourly calculation of his legal fee. The court overruled Gold's motions, and it later found in April 2014 that all the funds were the property of the bankruptcy estate and ordered Gold to turn them over to the trustee.

**{¶ 11}** Gold appealed the bankruptcy court's judgment to the bankruptcy appellate panel of the United States Court of Appeals for the Sixth Circuit. He continued to withdraw additional funds from his client trust account while that appeal was pending. By the end of May 2014, he had misappropriated more than $32,000, and by the time the appellate panel affirmed the bankruptcy court's judgment in December 2014, that number had climbed to nearly $49,000.

---

[1] This amount apparently includes interest on the money held by the Division of Unclaimed Funds. *See Sogg v. Zurz*, 121 Ohio St.3d 449, 2009-Ohio-1526, 905 N.E.2d 187; R.C. 169.08(D).

{¶ 12} In January 2015, Daher and the trustee reached a settlement that permitted Daher to receive $18,300 of the disputed funds in exchange for his agreement to refrain from any further appeals or litigation. Gold, who had negotiated the agreement on Daher's behalf, refused to sign it because it did not address his attorney fees. He also misappropriated an additional $250 during that month.

{¶ 13} On February 6, 2015, the bankruptcy court approved the settlement and ordered Gold to remit $32,722.37 to the trustee within five days. That day, Gold deposited $8,000 into his client trust account, issued Daher a $6,000 check from that account, and gave him approximately $6,000 in cash. Gold purported to keep $6,300 as a discounted fee under the contingent-fee agreement.

{¶ 14} Because Gold failed to timely remit $32,722.37 to comply with the bankruptcy court's order, the trustee moved the court to hold him in contempt. In response, Gold asserted for the first time that he had more than $49,000 in liens over the funds because he had performed more than 240 hours of work on the matter at $200 per hour—but at that time, the balance in his client trust account was just $50. On July 21, 2015, the bankruptcy court held that Gold was precluded from pursuing his alleged liens because he had failed to timely assert them. The court later denied Gold's motion to reconsider its decision and ordered him to turn over the funds by noon on July 28, but he failed to comply and the trustee again asked the court to hold him in contempt. The court scheduled a hearing and ordered Gold to bring "complete documentation establishing the current location of the funds."

{¶ 15} Gold filed a Fed.R.Civ.P. 60(b) motion for relief from judgment in the closed adversarial proceeding in the bankruptcy court. He also filed a notice of dismissal of all claims in the state-court proceeding and a motion to enforce a charging lien for attorney fees in that case. Although Gold appeared at the bankruptcy-court contempt hearing, he failed to comply with the court's order to

provide documentation regarding the location of the funds and it became apparent that he had not maintained adequate records for his client trust account.

{¶ 16} The trustee then filed a separate motion to hold Gold in contempt, in which the trustee requested that the bankruptcy court order an accounting and impose sanctions. Although Gold appeared at the ensuing contempt hearing, he did not bring the documents he had been ordered to produce. The court instructed Gold to find a nearby location to print his bank records, but when the hearing resumed, he had printed just some of the monthly statements for his client trust account. The court questioned Gold about those statements, but he did not directly answer most of the court's questions. The court later issued an opinion admonishing Gold and ordering the contempt hearing adjourned until a later date.

{¶ 17} As these events were occurring, Gold filed a Chapter 7 bankruptcy case of his own. After the court in Gold's personal bankruptcy case ruled in the trustee's favor on several motions filed by the parties, Gold failed to appear at a scheduled hearing, and the court dismissed Gold's personal bankruptcy case based on that failure.

{¶ 18} On November 12, 2015, the bankruptcy court reconvened the contempt hearing in Daher's bankruptcy case. Later that month, the court issued a decision finding Gold in contempt of court and ordering him to pay the trustee's attorney fees. The court also ordered him to file a written accounting of the funds entrusted to him within 14 days and ordered that he was to be fined $50 for each additional day of noncompliance. Gold unsuccessfully attempted to stay the proceedings pending the outcome of his appeal to the United States District Court for the Northern District of Ohio from the contempt order, sought a protective order, and invoked his Fifth Amendment right against self-incrimination in filings in the bankruptcy court. He also renewed his motion to enforce a charging lien in the state-court case.

**{¶ 19}** More than a year after Gold was first ordered to remit $32,722.37 to the trustee, he had neither transmitted the funds nor submitted an accounting for them. Consequently, on March 1, 2016, the bankruptcy court ordered Gold to pay a $32,722.27 fine, an additional $1,600 for his delay, and the trustee's attorney fees. The court also increased the daily fine for noncompliance to $100. That same day, Gold filed a notice with the bankruptcy court in which he falsely claimed that he had already provided the court with a "full accounting."

**{¶ 20}** Gold's appeal of the bankruptcy court's contempt ruling to the federal district court was unsuccessful. He then filed a notice of appeal in the United States Court of Appeals for the Sixth Circuit, but Gold and the trustee negotiated a settlement of the contempt matter. The parties in Gold's disciplinary proceeding stipulated (and the board acknowledged) that pursuant to the settlement, Gold agreed to pay the trustee $32,722.27, but neither the agreement nor the bankruptcy court's approval of the agreement appears in the record. As of the date of Gold's disciplinary hearing, he had made an initial lump-sum payment of $16,000 and two monthly payments of $2,000 toward his agreed obligation.

**{¶ 21}** The parties stipulated and the board found that Gold's conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separate from the lawyer's own property), 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account, the date, amount, and client affected by each credit and debit, and the balance in the account), 1.15(a)(4) (requiring a lawyer to maintain all bank statements, deposit slips, and canceled checks, if provided by the bank, for each bank account), 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d)

(prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). We agree with the board's findings of fact and misconduct, and consistently with our opinion in *Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21, we find that Gold's misconduct was sufficiently egregious to support a finding that he violated Prof.Cond.R. 8.4(h).

**Recommended Sanction**

**{¶ 22}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 23}** As aggravating factors, the parties stipulated and the board found that Gold acted with a dishonest or selfish motive and engaged in multiple offenses. *See* Gov.Bar R. V(13)(B)(2) and (4). Stipulated mitigating factors include the absence of prior discipline, a timely and good-faith effort to make restitution to Daher, Gold's cooperative attitude toward the disciplinary proceedings once the complaint was filed, and his full and free disclosure to the board. *See* Gov.Bar R. V(13)(C)(1), (3), and (4). Gold also acknowledged the wrongful nature of the conduct, though the board expressed concerns that Gold may not have acknowledged that some of his filings were frivolous or were attempts to obstruct the bankruptcy proceedings. The board also accepted the parties' stipulation that Gold suffered from adjustment disorder with disturbance of conduct, depressive disorder, anxiety disorder, and a substance-use disorder at all relevant times between 2012 and April 2016 and that the circumstances of those disorders satisfied the criteria to qualify as a mitigating factor pursuant to Gov.Bar R. V(13)(C)(7).[2]

---

[2] Gov.Bar R. V(13)(C)(7) provides that a mental-health disorder qualifies as a mitigating factor when all the following factors exist: a diagnosis of a disorder by a qualified health-care professional,

**{¶ 24}** In considering the appropriate sanction for Gold's misconduct, the board examined *Disciplinary Counsel v. Marshall*, 142 Ohio St.3d 1, 2014-Ohio-4815, 27 N.E.3d 481. Marshall had agreed to represent a client in a personal-injury action pursuant to a contingent-fee contract after the client terminated another attorney's representation. The client's former attorney, who had also taken the case on a contingent-fee basis, informed Marshall that he intended to assert a lien on any settlement proceeds based on his contract or alternatively, on the basis of quantum meruit. Just one month after accepting the representation, Marshall settled the case for $150,000.

**{¶ 25}** Due to the fee dispute between the two attorneys, the defendants in the personal-injury case submitted the settlement check to the court. At a hearing regarding the attorneys' entitlement to the fees, former counsel argued that his firm had completed 95 percent of the work on the case and was entitled to a fee of approximately $50,000, but the court continued the hearing before Marshall had the opportunity to present her case. The court ordered Marshall to disburse no more than $85,000 to her client and to hold the remaining settlement proceeds in trust until the fee dispute was resolved. Marshall deposited the money into a separate trust account that she had established for the client's benefit and soon disbursed more than $63,000 to her client. But she also violated the court's order by reimbursing her own expenses and accepting $25,000 from the client as a portion of her fee.

---

a determination that the disorder contributed to the respondent's misconduct, a sustained period of successful treatment, and a prognosis from a qualified health-care professional that the attorney will be able to return to the competent, ethical practice of law under specified conditions. The rule also provides that a substance-abuse disorder qualifies as a mitigating factor when all the following factors exist: a diagnosis of a disorder by a qualified chemical-dependency professional, a determination that the disorder contributed to the respondent's misconduct, a certification of successful completion of an approved treatment program, and a prognosis from a qualified chemical-dependency professional that the attorney will be able to return to the competent, ethical practice of law under specified conditions.

{¶ 26} Marshall then engaged in a multipronged effort to avoid the enforcement of former counsel's charging lien, unsuccessfully seeking several writs of prohibition, injunctive relief, and an emergency peremptory writ. She also unsuccessfully sought to disqualify the judge presiding over the case. And before the court could resume the fee-dispute hearing, Marshall distributed the remaining settlement proceeds—more than $60,000 to her client and more than $25,000 to herself. Marshall compounded her misconduct by failing to produce her client-trust-account records for the court's inspection, failing to timely appear for a hearing, refusing to answer the judge's questions, and making false and misleading statements to the court. She was twice held in contempt of court, sought to discharge her obligation to her client's former counsel in bankruptcy, and made unfounded allegations of racial and gender bias against the trial judge.

{¶ 27} The board found that the facts of Gold's misconduct are very similar to those in *Marshall*. Both Gold and Marshall held tens of thousands of dollars in trust pursuant to court orders pending the judicial resolution of fee or ownership disputes. Each attorney took the funds in violation of the court's orders, failed to comply with court orders to produce required records regarding the funds, and, consequently, was held in contempt of court. There are also common aggravating and mitigating factors, including a dishonest or selfish motive, multiple offenses, the absence of prior discipline, and full and free disclosure.

{¶ 28} The board recognized that Gold established the existence of additional mitigating factors beyond the two that were also present in *Marshall*— including his timely payment of restitution to Daher and his qualifying mental and substance-use disorders. While the board found that the mitigating evidence warranted a deviation from the presumptive sanction of disbarment, it rejected Gold's proposed sanction of a fully stayed suspension. *See, e.g., Disciplinary Counsel v. Bubna*, 116 Ohio St.3d 294, 2007-Ohio-6436, 878 N.E.2d 632, ¶ 27 (recognizing that although disbarment is the presumptive sanction for

10

misappropriation, that sanction may be tempered with sufficient evidence of mitigating or extenuating circumstances).

{¶ 29} Instead, the board recommends that we impose a two-year suspension with the second year stayed on conditions, the same sanction imposed in *Marshall*. Among the recommended conditions are that Gold comply with the contract that he has entered into with the Ohio Lawyers Assistance Program ("OLAP") and comply with any extension of that contract, make full restitution to the trustee in Daher's bankruptcy proceeding, pay all other monetary sanctions imposed on him by the bankruptcy court pursuant to its contempt finding against him, and commit no further misconduct. In addition, the board recommends that upon reinstatement, Gold be required to serve a one-year period of monitored probation focused on a lawyer's proper use of a client trust account.

### Objection to Recommended Sanction

{¶ 30} Although Gold acknowledges in his brief that the facts of *Marshall* are "remarkably similar" to the facts of this case, he objects to the board's recommendation that we impose a sanction comparable to the one we imposed in that case. Based on Gold's perception that his own misconduct is less egregious and that the mitigating factors in his case are more compelling than those in Marshall's case, Gold argues that a fully stayed two-year suspension is the appropriate sanction for his misconduct. But we are not convinced that Gold's misconduct is, in fact, less egregious than Marshall's. Nor are we persuaded that the mitigating factors found by the board or the additional mitigating factors advanced by Gold in support of his objection warrant the imposition of a fully stayed suspension in this case.

{¶ 31} Gold attempts to minimize the severity of his own misconduct by claiming that he was "forthcoming and honest" with the bankruptcy court while noting that Marshall not only made false and misleading statements to a judge but also made false or unsupported allegations of racial and gender bias against a judge.

The record, however, demonstrates that in at least one bankruptcy-court filing, Gold falsely claimed that the disputed funds remained in his client trust account—even though bank records clearly show that his client-trust-account balance had dropped to just $50 by the time of that filing—and that in at least one other bankruptcy-court filing, Gold falsely claimed that the disputed funds were in his possession. The record also shows that he failed to comply with the bankruptcy court's orders to bring his complete client-trust-account records to hearings, resisted being placed under oath, and was evasive when answering the court's questions.

{¶ 32} We acknowledge that Gold answered in the affirmative when the bankruptcy-court judge at the August 17, 2015 contempt hearing asked whether he had ever removed the disputed funds from his client trust account. However, the transcript from that hearing also shows that on further questioning, Gold claimed to have no recollection of when he had removed the money, how many times he had made disbursements, or how much of the approximately $51,000 he had disbursed. And although Gold admitted taking more than $10,000, he did not respond when the judge asked whether he had withdrawn more than $15,000. When the judge then asked whether any of the money remained in his account, the transcript shows that there was a "47 second pause" before Gold stated, "I think I need an attorney" and the hearing was continued to a later date.

{¶ 33} On these facts, we cannot find that Gold's conduct before the bankruptcy court was forthcoming and honest. Nor can we agree with his assertion that his misconduct is less egregious than Marshall's because he did not knowingly or recklessly impugn the integrity of a judge with unfounded allegations of bias as Marshall did. Indeed, we find that at least one aspect of Gold's misconduct is more egregious than Marshall's because, despite Gold's arguments to the contrary, the evidence plainly demonstrates that Gold misappropriated funds from the very client he was duty-bound to protect.

{¶ 34} Gold also argues that the balance of the aggravating and mitigating factors in his case weigh more heavily in favor of a fully stayed suspension. He points to the fact that an equal number of aggravating and mitigating factors (four each) were present in *Marshall* while at least five mitigating factors and just two aggravating factors are present in this case. But Gov.Bar R. V(13)(A) recognizes that each disciplinary case "involves unique facts and circumstances" and Gov.Bar R. V(13)(B) and (C) go on to state that the aggravating and mitigating factors enumerated in the rule "may be considered" in recommending a more or less severe sanction but "shall not control" the discretion of the board. Thus, the board's analysis of the aggravating and mitigating factors—and, in turn, our own—have never come down to a strict mathematical equation. On the contrary, these analyses have always involved a careful balancing of the relative weight of the relevant factors.

{¶ 35} Here, the board found that Gold has no prior disciplinary record in his 13-year legal career, made a timely and good-faith effort to make restitution to Daher, made full and free disclosure to the board, exhibited a cooperative attitude toward the disciplinary proceedings, and established the existence of qualifying mental and substance-use disorders. Gold's timely restitution to Daher, however, is tempered by the fact that Gold made numerous frivolous filings in multiple courts in an effort to conceal his misconduct and to delay making restitution to the trustee in Daher's bankruptcy proceeding.

{¶ 36} The evidence of Gold's qualifying mental and substance-use disorders is likewise overshadowed by his testimony at his disciplinary hearing, during which he admitted his noncompliance with the five-year OLAP contract he had entered into more than 14 months earlier. Specifically, Gold acknowledged that he was not checking in with OLAP as frequently as required, had not found an Alcoholics Anonymous ("AA") home group, and was not attending AA meetings even though his contract required him to attend at least three per week. His claims

that he was "very uncomfortable with AA for a number of reasons" and that he hoped to alter the terms of his OLAP contract so that he could spend more time with his family do not excuse this failure. Moreover, his failure to comply with that contract raises significant concerns about his ability to abide by the terms of other agreements and court orders and, consequently, his ability to practice law in a competent, ethical, and professional manner going forward.

**{¶ 37}** Gold's misconduct centers around the misappropriation of client funds, for which the presumptive sanction is disbarment, *Bubna*, 116 Ohio St.3d 294, 2007-Ohio-6436, 878 N.E.2d 632, at ¶ 27, and a course of conduct involving dishonesty, for which we typically impose an actual suspension from the practice of law for an appropriate period of time, *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 191, 658 N.E.2d 237 (1995). We agree that the mitigating factors found by the board warrant a deviation from the presumptive sanction of disbarment. However, they are not sufficient to warrant the imposition of a fully stayed suspension in this case. Therefore, we overrule Gold's objection and adopt the board's findings of fact, conclusions of law, and recommended sanction.

**{¶ 38}** Accordingly, John Walter Gold is suspended from the practice of law in Ohio for two years with the second year stayed on the conditions that he comply with his OLAP contract and any extension of that contract, make full restitution to the bankruptcy trustee and pay any monetary sanctions imposed by the bankruptcy court in conjunction with his contempt, and engage in no further misconduct.[3] Upon reinstatement to the practice of law, Gold shall serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21) with a

---

[3] On March 23, 2018, Gold filed a notice of supplemental authority stating that on March 21, 2018, the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division issued an order in case No. 10-17252, *In re Daher*. In that order, the bankruptcy court recognized that Gold had paid $32,722.37 to the bankruptcy trustee in full settlement of all claims and vacated the two judgments of contempt previously issued against Gold. We deny relator's motion to strike Gold's supplemental authority, as it was permitted under S.Ct.Prac.R. 17.09(B). Although we acknowledge that those judgments have been vacated, the bankruptcy court's order does not affect our analysis.

focus on the proper use of his client trust account. If Gold fails to comply with a condition of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Gold.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, SADLER, FISCHER, and DEWINE, JJ., concur.

LISA L. SADLER, J., of the Tenth District Court of Appeals, sitting for O'Neill, J.

_____

Scott J. Drexel, Disciplinary Counsel, Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Zukerman, Daiker & Lear Co., L.P.A, Larry W. Zukerman, S. Michael Lear, and Brian A. Murray, for respondent.

_____