**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Jancura*, **Slip Opinion No. 2022-Ohio-3189.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3189

DISCIPLINARY COUNSEL *v*. JANCURA.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Jancura*, Slip Opinion No. 2022-Ohio-3189.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with the second year stayed on conditions.*

(No. 2022-0367—Submitted May 24, 2022—Decided September 14, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2021-024.

————————

**Per Curiam.**

**{¶ 1}** Respondent, Diana Jancura, of Sheffield Lake, Ohio, Attorney Registration No. 0069490, was admitted to the practice of law in Ohio in 1998. In a September 2021 complaint, relator, disciplinary counsel, alleged that Jancura had committed multiple ethical violations by fraudulently misappropriating funds from

the probate estate of a family member and engaging in a pattern of deceit and dishonesty to conceal her theft.

**{¶ 2}** The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors, but they did not agree on an appropriate sanction. The matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. The panel issued a report finding that Jancura had committed the charged misconduct and recommending that she be suspended from the practice of law for two years with one year stayed. The board adopted that report and recommendation and specified two conditions for the stay. No objections have been filed.

**{¶ 3}** For the reasons that follow, we adopt the board's findings of misconduct and recommended sanction.

### Misconduct

**{¶ 4}** In 2003, Jancura created a revocable trust for her cousin, Christopher Kovach Sr., and his wife, Angela Ceo. Two years later, Kovach died. In 2016, Jancura revised the trust at Ceo's behest to designate Ceo's mother, Candice Frantz, as a successor trustee. She also revised Ceo's will to name Frantz as the guardian of Ceo's minor children, L.K. and C.K. Ceo died in October 2016, and Frantz retained Jancura to represent her in her capacity as trustee of the Ceo trust and guardian of Ceo's children.

**{¶ 5}** In December 2018, Jancura's maternal aunt, Patricia DiRenzo (who was also the paternal grandmother of Ceo's children), died. Pursuant to DiRenzo's will, L.K. and C.K. were the sole heirs of her estate.

**{¶ 6}** The Cuyahoga County Probate Court granted Jancura's application to administer DiRenzo's estate. Based on the value of the estate, Jancura would have been entitled to approximately $6,000 in fiduciary fees for administering the estate as well as another $6,000 in attorney fees. *See* R.C. 2113.35; Loc.R. 71(D) of the Court of Common Pleas of Cuyahoga County, Probate Division. However, a local

rule provides that when the same person serves as the administrator and attorney for the estate (or when the attorney for the estate is affiliated with the administrator's law firm), the attorney fees are rebuttably presumed to be one-half of the amount allowed by the standard fee schedule. Loc.R. 71.1(H) of the Court of Common Pleas of Cuyahoga County, Probate Division. Thus, Jancura's total compensation for handling the estate was limited to approximately $9,000 unless she filed a motion for extraordinary fees with supporting documentation.

{¶ 7} In May 2019, Jancura made a distribution from the DiRenzo estate to L.K. and C.K. and distributed $10,000 to her firm for legal fees related to her representation of Frantz as the guardian of the children and trustee of the Ceo trust. She later withdrew an additional $6,000 in fiduciary fees from the estate account.

{¶ 8} That October, Jancura issued a $5,200 check, payable to "cash" from the estate account. She cashed the check and used the proceeds to purchase a cashier's check payable to James Kepler. She and her husband then used the cashier's check to purchase a 2003 BMW from Kepler. When Jancura cashed the estate check, she was entitled to only about $3,000 in scheduled attorney fees from the DiRenzo estate. But in November, she withdrew an additional $6,000 in attorney fees from the estate account, bringing her total withdrawals for her own fees to $27,200.

{¶ 9} Jancura's husband, who was also her law partner, entered an appearance in the DiRenzo estate case in March 2020. In April, Jancura filed a motion seeking payment of $3,000 in scheduled attorney fees plus $3,000 in extraordinary fees for herself and her husband. That motion did not disclose that Jancura had already withdrawn the extraordinary fees plus $5,200 to purchase a car for her personal use. Along with the motion for attorney fees, Jancura filed a partial fiduciary account that included a false entry to conceal her $5,200 misappropriation. That entry stated that on October 1, 2019, Jancura paid "James Kebler [sic]" $5,200 for work performed for the decedent prior to her death.

Jancura has since admitted that "James Kebler" was really James Kepler—the person who sold her the BMW—and that he had not performed any work for DiRenzo or the estate.

{¶ 10} Upon receipt of the partial accounting from Jancura, Frantz retained attorney James Arnold to review the estate's record. Arnold requested an accounting of numerous expenses listed in Jancura's fiduciary account, including the $5,200 payment to Kepler. In response, Jancura drafted a letter to Arnold explaining as follows:

> Written claim filed against the estate from James Kepler for service provided to Patricia DiRenzo prior to her passing. Diana Jancura discussed the services provided with Mr. Kepler and validated the authenticity of them prior to payment of the claim. Also included is a copy of the cashier's check paid to Mr. Kepler and a copy of the cancelled estate check used to purchase the cashier's check issued to Mr. Kepler.

Although Jancura knew that the content of the letter was false, she represented to her husband that it was true and had him sign the letter as the estate's attorney.[1]

{¶ 11} In response to a request from Arnold for additional information, Jancura provided two fabricated receipts. The first receipt was for $5,200 and stated that Kepler performed $5,000 in labor and furnished $200 in materials for DiRenzo's home from May to October 2018. On that receipt, Jancura handwrote, "Paid 10/1 #165 for cashier's check." The other receipt was identical in all respects

---

1. Relator filed a separate complaint against Jancura's husband, Scott Jancura, for misconduct related to this case. On the board's recommendation, we accepted the parties' consent-to-discipline agreement and imposed a conditionally stayed six-month suspension for Scott's admitted misconduct. *See Disciplinary Counsel v. Jancura*, 166 Ohio St.3d 1511, 2022-Ohio-1687, 187 N.E.3d 566.

except that it was for $2,200, the $5,000 was replaced with $2,000, and Jancura had forged the signature "J Kepler" above the handwritten note.

{¶ 12} In August 2020, Frantz filed a motion seeking Jancura's removal as administrator of the estate, the denial of Jancura's pending motion for fees, and an order refunding fees that had previously been paid for administration of the estate. Among other exceptions to the accounting, Frantz alleged that Jancura had misappropriated the $5,200 she paid to Kepler and had committed fraud in an attempt to conceal her conduct. Shortly thereafter, Jancura returned the $5,200 to the estate account and filed the final fiduciary account, which included the entry "Return of Kepler claim" for $5,200.

{¶ 13} In October 2020, Arnold deposed Jancura. In her testimony, Jancura admitted that she had fabricated the receipts for services purportedly provided to the estate by Kepler. She claimed that the $5,200 payment was part of her attorney or fiduciary fee, though she had already collected $6,000 in fiduciary fees and the $5,200 exceeded the $3,000 in attorney fees that she would have been entitled to receive without filing a motion for extraordinary fees. Jancura further acknowledged that just one month after withdrawing the $5,200, she improperly withdrew another $6,000 in fees.

{¶ 14} The board did not find Jancura's testimony about the forged receipts to be particularly credible. Its report states that at her disciplinary hearing, she "seemed to land on the theory" that she had created the $2,200 receipt as a mistake and later "correct[ed]" it with the $5,200 receipt. However, the board found that it could not be a coincidence that Jancura had mistakenly drafted one of the fraudulent receipts for $2,200—the same amount that her husband had falsely reported to the Bureau of Motor Vehicles as the sale price for the BMW that they had purchased from Kepler.

{¶ 15} Although Jancura ultimately withdrew as the administrator of the DiRenzo estate and withdrew her motion for attorney fees, her fraud and poor

accounting practices forced Frantz to take additional legal action to oppose her final account. Jancura and Frantz eventually settled the case. Jancura repaid the $5,200 that she had misappropriated from the estate, the $12,000 in fees related to the administration of the estate, and the $10,000 in fees that she had withdrawn for legal work she had performed relative to the guardianship and trust.

{¶ 16} Jancura stipulated and the board found that her conduct violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 3.4(b) (prohibiting a lawyer from falsifying evidence), 4.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact or law to a third person), and 8.4(a) (prohibiting a lawyer from knowingly inducing another lawyer to violate or attempt to violate the Ohio Rules of Professional Conduct),[2] 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). We adopt these findings of misconduct.

### Sanction

{¶ 17} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 18} The parties stipulated and the board found that four aggravating factors are present here: Jancura acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, and harmed vulnerable victims. *See* Gov.Bar R. V(13)(B)(2), (3), (4), and (8).

---

2. Relator's complaint, the parties' stipulations, and the board's report mistakenly cited Prof.Cond.R. 8.1(a) but included in that citation the summary of the conduct prohibited by Prof.Cond.R. 8.4(a).

**{¶ 19}** As for mitigating factors, the parties stipulated and the board found that Jancura has no prior discipline, had made a timely, good-faith effort to make restitution (albeit *after* Frantz filed a motion to remove her as the administrator of the DiRenzo estate), and had made full disclosure to the board and demonstrated a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(1), (3), and (4). The parties also stipulated that Jancura had submitted evidence of her good character or reputation in the form of 14 character letters written by colleagues, clients, and friends. *See* Gov.Bar R. V(13)(C)(5). The board afforded those letters some mitigating effect, although it was troubled by the authors' references to Jancura's "one instance" of misconduct, her "poor judgment call," her "mistakes," and her "questionable decisions"—none of which accurately represented the full extent of Jancura's misconduct.

**{¶ 20}** At her disciplinary hearing, Jancura testified that she suffers from symptoms of depression and had begun meeting with a therapist; however, it does not appear that Jancura has been diagnosed with any mental disorder. Although Jancura entered into a two-year contract with the Ohio Lawyers Assistance Program ("OLAP"), her counselor reported that Jancura "did not want therapeutic treatment for a mental health diagnosis but desired to attend therapy to better herself and improve her perspective."

**{¶ 21}** The board's report states that Jancura acknowledged the wrongfulness of and expressed remorse for her misconduct, but it also notes that she did not appear to accept full responsibility for her actions. Instead, Jancura suggested that several factors had contributed to her misconduct, including her poor relationship with Frantz (the children's guardian), the alleged hostility of Frantz's counsel, COVID-19 lockdowns, unresolved childhood trauma, and "demonic thoughts." The board rejected those claims. For example, the board's report states that Jancura's difficult relationship with Frantz did not excuse her decisions to falsify a court entry, forge two receipts, and lie to her law partner/husband.

Moreover, it found that her effort to justify her misconduct on that ground did not bode well for any future clients whom, like Frantz, Jancura finds to be difficult, dismissive, or ungrateful. Similarly, the board rejected Jancura's claims that Frantz's counsel was unreasonably hostile, noting that counsel was right to question Jancura's accounting because she had already engaged in wrongdoing. The board likewise rejected Jancura's claims that "[n]one of this would have happened but for the COVID" because the lockdown occurred five months *after* she misappropriated estate funds and just one month before she submitted her fraudulent partial fiduciary account. Furthermore, the board's report notes that Jancura testified that it was *the litigation following her misconduct* that had triggered memories of a childhood trauma rather than the trauma triggering the misconduct.

{¶ 22} In determining the appropriate sanction for Jancura's misconduct, the board considered decisions imposing sanctions ranging from disbarment to fully stayed term suspensions for misconduct involving varying degrees of misappropriation. *See, e.g.*, *Disciplinary Counsel v. Hunter*, 106 Ohio St.3d 418, 2005-Ohio-5411, 835 N.E.2d 707 (disbarring attorney who, over three years, embezzled nearly $300,000 from the estates of two people for whom she had served as a court-appointed guardian); *Disciplinary Counsel v. Gorby*, 142 Ohio St.3d 35, 2015-Ohio-476, 27 N.E.3d 510 (imposing a conditionally stayed one-year suspension on an attorney who misappropriated funds from family members who were also her clients and with whom she had a very contentious relationship).

{¶ 23} The board found that the facts of this case most closely align with those of several cases in which we imposed partially stayed term suspensions for the misappropriation of client funds coupled with attempts to conceal that misconduct. For example, in *Disciplinary Counsel v. Gildee*, 134 Ohio St.3d 374, 2012-Ohio-5641, 982 N.E.2d 704, the attorney misappropriated client funds, falsified a document in an attempt to justify her misappropriation, and made a false representation to the relator in the subsequent disciplinary action regarding the

status of a payment she had promised to make to the client. In contrast to Jancura, Gildee had not made restitution at the time of her disciplinary hearing, due to her dire financial condition. We found that Gildee's multiple acts of dishonesty required an actual suspension from the practice of law and that the mitigating evidence—including the absence of a disciplinary record, full and free disclosure to the board, positive character evidence, and genuine remorse—weighed in favor of a two-year suspension with one year conditionally stayed. *Id.* at ¶ 17-18.

{¶ 24} In *Disciplinary Counsel v. Gold*, 154 Ohio St.3d 106, 2018-Ohio-3238, 111 N.E.3d 1158, we imposed the same sanction on an attorney who had misappropriated client funds in violation of a court order requiring him to hold those funds in trust and then had engaged in a pattern of dishonesty, misrepresentation, and frivolous court filings to conceal that misappropriation. Although Gold presented only some of the aggravating and mitigating factors that are present in this case, he also established the existence of several mitigating disorders.

{¶ 25} On the authority of *Gildee* and *Gold*, the board recommends that we suspend Jancura from the practice of law for two years with one year stayed on the conditions that she engage in no further misconduct and pay the costs of these proceedings. The board further recommends that as an additional condition of reinstatement, Jancura be required to submit proof of compliance with her September 21, 2021 OLAP contract and any recommended extension thereof.

{¶ 26} Having independently reviewed the relevant factors, we agree that the sanction recommended by the board is appropriate.

## Conclusion

{¶ 27} Accordingly, Diana Jancura is suspended from the practice of law in Ohio for two years with the second year stayed on the conditions that she commit no further misconduct and pay the costs of these proceedings. In addition to the requirements for reinstatement set forth in Gov.Bar R. V(24), Jancura shall be

required to submit proof of compliance with her September 21, 2021 OLAP contract and any extension recommended by OLAP. If Jancura fails to comply with any condition of the stay, the stay will be lifted and she will serve the full two-year suspension. Costs are taxed to Jancura.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Matthew A. Kanai and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Diana Jancura, pro se.

_____