DISCIPLINARY COUNSEL *v.* BLAIR.

[Cite as *Disciplinary Counsel v. Blair,* 128 Ohio St.3d 384, 2011-Ohio-767.]

*Attorneys — Misconduct — Multiple violations of the Disciplinary Rules and Rules of Professional Conduct — Partially stayed suspension, with probation and continued alcohol and mental-health treatment ordered.*

(No. 2010-1862 — Submitted January 4, 2011 — Decided February 24, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-013.

_____

**Per Curiam**.

{¶ 1}  Respondent, Rebecca Susan Blair, of Cleveland, Ohio, Attorney Registration No. 0037270, was admitted to the practice of law in Ohio in 1986.  In July 2010, relator, Disciplinary Counsel, filed an amended two-count complaint charging respondent with multiple violations of the Code of Professional Responsibility and the Rules of Professional Conduct[1] arising from her mishandling and misappropriation of funds belonging to an incompetent ward, and her failure to properly supervise her employees, which resulted in the filing of a false guardian account and a forged affidavit.  The parties entered into agreed stipulations of fact and misconduct and have agreed to a number of mitigating factors.  The panel and board have accepted the stipulated findings.

{¶ 2}  The parties stipulated that the appropriate sanction for respondent's misconduct is a one-year suspension with six months stayed on conditions.  The

_____

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility. When both the former and current rules are cited for the same act, the allegation constitutes a single ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

panel, however, concluded, and the board agreed, that respondent's misappropriation of more than $16,000 belonging to her incompetent ward warranted a greater period of suspension and probation. Accordingly, the panel and board recommend that we suspend respondent from the practice of law for two years with 18 months stayed on the conditions that respondent be placed on monitored probation in accordance with Gov.Bar R. V(9), remain in compliance with her Ohio Lawyers Assistance Program ("OLAP") contract, continue to receive alcohol and mental-health counseling, and complete a continuing legal education ("CLE") course in law-office management. Neither party has objected to the board's findings or recommendation.

{¶ 3} We agree that respondent has committed professional misconduct as stipulated by the parties and found by the board and that a two-year suspension with 18 months stayed is the appropriate sanction for that misconduct.

**Misconduct**

*Count I*

{¶ 4} The panel and board adopted the parties' stipulation that in January 2005, the Cuyahoga County Probate Court appointed respondent to serve as the successor guardian for an incompetent ward's estate. After deducting her court-approved fees, respondent held $16,972.83 of the ward's remaining assets in her client trust account. None of this money was placed in an interest-bearing account on behalf of the ward. Within six months, respondent had withdrawn all the ward's assets from her client trust account but did not use any of those funds for the ward's benefit.

{¶ 5} The panel and board agree that these facts clearly and convincingly demonstrate that respondent's conduct violates DR 1-102(A)(4) and Prof.Cond.R. 8.4(c) (both prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (both prohibiting a lawyer from engaging in conduct that adversely reflects on the

2

lawyer's fitness to practice law), DR 9-102(B)(3) and Prof.Cond.R. 1.15(a)(2) (both requiring a lawyer to maintain a record for each client on whose behalf funds are held), as well as DR 9-102(E)(1) (requiring an attorney to maintain client funds in an interest-bearing account) and Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients separate from the lawyer's own property). They further recommend that we dismiss alleged violations of DR 1-102(A)(5) and Prof.Cond.R. 8.4(d) (both prohibiting conduct that is prejudicial to the administration of justice) in accordance with the parties' stipulations.

{¶ 6} In addition to the factual findings of the panel and board, we note that the parties have stipulated that between March 25, 2005, and September 9, 2005, respondent wrote 31 checks against her client trust account. Twenty-six of those checks – totaling $33,150 – were payable to respondent. And by July 2006, respondent's client trust account had a negative balance.

{¶ 7} Although the probate court issued a notice to file account in January 2007 and a citation to file account in March 2007, respondent failed to file the guardianship account. Instead, she requested and obtained eight separate 30-day extensions for the filing of the account. When the court granted the final extension in November 2007, it also issued a motion to remove respondent as the fiduciary for failure to file the account.

{¶ 8} By December 2007, respondent had accumulated over $20,000 in earned fees in her client trust account, and on December 10, 2007, she reimbursed $16,972.83 to her ward from those funds. In June 2009, she paid the ward an additional $2,000 to compensate the ward for the interest that would have been earned if respondent had initially deposited the ward's funds in a separate interest-bearing account.

{¶ 9} Accepting the board's factual findings and adopting these additional stipulated facts, we conclude that respondent has violated DR 1-102(A)(4), 1-102(A)(6), 9-102(B)(3), and 9-102(E)(1), as well as Prof.Cond.R.

8.4(c), 8.4(h), 1.15(a)(2), and 1.15(a), as found by the panel and board. We also dismiss the alleged violations of DR 1-102(A)(5) and Prof.Cond.R. 8.4(d) as stipulated by the parties and recommended by the panel and board.

*Count II*

{¶ 10} Count II arises from respondent's failure to adequately supervise her staff while she served as the guardian for the incompetent ward discussed in Count I. Specifically, respondent had authorized her staff to prepare and file pleadings regarding the guardianship in the probate court with no oversight and supervision.

{¶ 11} On December 4, 2007, respondent's staff prepared and filed a motion to correct an inventory previously filed in the guardianship proceeding to reflect that the true value of the ward's assets was $25,656 instead of the $30,000 previously reported. In support of that motion, respondent's staff prepared an affidavit falsely stating, "Affiant further states that this entire amount was deposited into her [client trust] account to hold on behalf of [the ward], and the only disbursements from said funds have been $8,683.17 for attorney's fees approved by this Court." A member of the staff signed respondent's name to the affidavit and notarized the forged signature before filing it with the court. In fact, the ward's account was bankrupt.

{¶ 12} Based upon the misrepresentations in the affidavit, the probate court "corrected" the inventory and dismissed its motion to remove respondent as fiduciary. The parties stipulated that respondent's staff later prepared a guardian's account that falsely represented the disbursements and remainder of the ward's assets, signed the respondent's name to the document, and filed it in the probate court.

{¶ 13} The panel and board conclude that these findings clearly and convincingly demonstrate that respondent's conduct violated Prof.Cond.R. 8.4(d), 8.4(h), and 5.3(a) (requiring a lawyer possessing managerial authority in a law

firm to make reasonable efforts to ensure that the conduct of nonlawyers working for the firm is compatible with the professional obligations of the lawyer). We accept these findings of fact and misconduct.

**Sanction**

{¶ 14} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 15} In mitigation of punishment, the panel and board accepted the parties' stipulations that respondent has no prior disciplinary record, has made a timely and good-faith effort to make restitution, has made full and free disclosure to the board and demonstrated a cooperative attitude toward the disciplinary proceedings, and has a positive reputation in the legal community. See BCGD 10(B)(2)(a), (c), (d), and (e). Additionally, the panel and board observed that Dr. David Feldman, a board-certified psychiatrist, has diagnosed respondent with alcohol dependence and recurrent major depressive disorder and determined that these conditions contributed to the conduct alleged in Count II of the amended complaint. Further, they found that respondent has been sober since January 2, 2008, continues to actively participate in Alcoholics Anonymous and the Ohio Lawyers Assistance Program ("OLAP"), has sustained treatment for her depression, and remains under the care of her treating psychiatrist and a licensed social worker. The panel and board concluded that these factors constitute "other interim rehabilitation" pursuant to BCGD Proc.Reg. 10(B)(2)(h). Moreover,

respondent's treating psychiatrist and her OLAP counselor report that she will be able to return to the competent, ethical practice of law.  See BCGD 10(B)(2)(g).

{¶ 16} Although the parties stipulated that no aggravating factors were present, the panel and board found that respondent had acted with a dishonest or selfish motive when she misappropriated the guardianship funds in Count I. BCGD Proc.Reg. 10(B)(1)(b).

{¶ 17} Citing the lack of criminal consequences for respondent's misappropriation of guardianship assets and the lack of an expert opinion causally linking that conduct to her chemical dependency or her depression, the panel and board rejected the parties' recommended sanction of a 12-month suspension with six months conditionally stayed.  Citing *Columbus Bar Assn. v. Kostelac* (1997), 80 Ohio St.3d 432, 687 N.E.2d 408, and *Cincinnati Bar Assn. v. Diehl*, 105 Ohio St.3d 469, 2005-Ohio-2817, 828 N.E.2d 1004, they recommend that we impose a two-year suspension with 18 months stayed on the conditions that respondent serve 18 months of monitored probation, continue to comply with  her OLAP contract, continue to receive alcohol and mental-health counseling, and in addition to the CLE requirements of Gov.Bar R. X, complete a CLE course in law-office management.

{¶ 18} In *Kostelac*, the attorney used his client trust account as an operating account, failed to keep accurate records of deposits and disbursements, issued a check to a client that was dishonored for insufficient funds, and used client funds for his own purposes.  *Kostelac*, 80 Ohio St.3d at 433, 687 N.E.2d 408.  Although he paid restitution to the affected clients, we observed that "even where the client suffers no harm, an attorney's commingling of his own funds with client funds or the attorney's use of client funds for operating expenses is subject to sanction."  Id. at 434.  Therefore, we adopted the board recommendation and suspended Kostelac's license to practice law for two years with 18 months stayed on conditions. Id. at  435.

**{¶ 19}** Likewise, in *Diehl* we suspended an attorney's license to practice law for two years with 18 months conditionally stayed for misappropriating client funds to cover his business expenses, failing to maintain professional-liability insurance, and failing to notify his client of this fact. *Diehl*, 105 Ohio St.3d 469, 2005-Ohio-2817, 828 N.E.2d 1004, at ¶ 4, 6, 11.

**{¶ 20}** In this case, respondent not only misappropriated $16,972.83 belonging to an incompetent ward, but respondent's depression and alcohol abuse prevented her from adequately supervising her staff. Due to her lax supervision, her staff was able to file a false account and a forged affidavit in the guardianship proceeding.

**{¶ 21}** We have recognized that "[t]he mishandling of clients' funds either by way of conversion, commingling, or just poor management, encompasses an area of the gravest concern of this court in reviewing claimed attorney misconduct." *Columbus Bar Assn. v. Thompson* (1982), 69 Ohio St.2d 667, 669, 23 O.O.3d 541, 433 N.E.2d 602. Therefore we agree with the board's conclusion that respondent's conduct warrants a greater sanction than the parties have jointly recommend. Accordingly, we adopt the board's recommended sanction and suspend Rebecca S. Blair from the practice of law in Ohio for two years, with 18 months stayed on the conditions that she serve 18 months of probation supervised by a monitor appointed by relator in accordance with Gov.Bar R. V(9), remain in compliance with her OLAP contract and continue to receive both alcohol and mental-health counseling, complete 12 hours of CLE in law-office management in addition to the CLE requirements of Gov.Bar R. X, and commit no further misconduct. If respondent fails to comply with these conditions, the stay will be lifted, and respondent will serve the entire two-year suspension. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

————————————

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Senior Assistant Disciplinary Counsel, for relator.

Michele M. Lazzaro, for respondent.

————————————