[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Juhola*, Slip Opinion No. 2025-Ohio-5663.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5663

DISCIPLINARY COUNSEL *v*. JUHOLA.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Juhola*, Slip Opinion No. 2025-Ohio-5663.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—r Unauthorized transfer of funds from guardianship account to other guardianship or client accounts on multiple occasions—Two-year suspension with 18 months conditionally stayed.*

(No. 2025-0789—Submitted August 6, 2025—Decided December 23, 2025.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2024-036.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, HAWKINS, and SHANAHAN, JJ.  DEWINE and DETERS, JJ., concurred in part and dissented in part and would adopt the recommendations of the Board of Professional Conduct that Juhola be suspended from the practice of law for six

months and that he be required to work with a monitoring attorney for one year following his reinstatement. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Michael Duane Juhola, of Worthington, Ohio, Attorney Registration No. 0010709, was admitted to the practice of law in Ohio in 1980. He commenced his solo practice in 1988 and focuses primarily on probate work, including guardianships, estates, and land-sale actions.

{¶ 2} In a November 2024 complaint, relator, disciplinary counsel, charged Juhola with misconduct arising from his unauthorized transfer of funds from the guardianship account of one of his wards to other guardianship or client accounts on three occasions. Juhola waived an independent determination of probable cause pursuant to Gov.Bar R. V(11)(B).

{¶ 3} The parties entered into stipulations of fact, misconduct, and mitigating factors, and they submitted 24 stipulated exhibits. Juhola submitted three additional exhibits. After conducting a hearing, a three-member panel of the Board of Professional Conduct issued a report in which it found by clear and convincing evidence that Juhola had committed the charged misconduct. The panel recommended that Juhola be suspended from the practice of law for six months and that he be required to work with a monitoring attorney for one year following his reinstatement. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. The parties have jointly waived objections.

{¶ 4} After independently reviewing the record and our precedent, we adopt the board's findings of misconduct. We find, however, that the appropriate sanction for Juhola's misconduct is a two-year suspension with 18 months stayed on the condition that he engage in no further misconduct. In addition, Juhola shall serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21). The monitored probation shall commence with Juhola's first appointment as a

guardian following his reinstatement to the profession and will focus on the proper use and distribution of guardianship funds.

## MISCONDUCT

### Transfers Between the Woelfel and McDaniel Accounts

{¶ 5} The parties have stipulated that at all times relevant to these proceedings, Juhola served as the guardian of the estates of Bradford Woelfel and Todd McDaniel. *See In re Guardianship of Woelfel*, Franklin P.C. No. 585422; *In re Guardianship of McDaniel*, Franklin P.C. No. 599936.

{¶ 6} On January 18, 2023, Juhola transferred $20,000 from one of Woelfel's accounts to McDaniel's account at the same bank without requesting permission from the probate court. On February 27, he transferred another $5,000—again without seeking permission. During his disciplinary hearing, Juhola testified that he had a cash-flow problem due to a delay in the sale of some stock that McDaniel owned. He was afraid that if he were to have requested permission to transfer the money from Woelfel's account to McDaniel's account, his request would have been denied. He explained, "My thought was no harm, no foul; ask for forgiveness instead of permission."

{¶ 7} Juhola spent the entire $25,000 withdrawn from Woelfel's account to pay for McDaniel's housing at an assisted living facility. He did not tell McDaniel that he had used another client's money to pay those expenses. Juhola completed the sale of McDaniel's stock a few weeks later, and on April 10, 2023, he used the proceeds to reimburse Woelfel's account. He chose not to disclose any of the transfers between the Woelfel and McDaniel accounts in the accounting he filed with the probate court relative to the Woelfel estate.

### Transfers Between the Woelfel and Jarvis Accounts

{¶ 8} From April 2011 until March 2023, Juhola also served as the conservator for Cyle Adam Jarvis. *See In re Conservatorship of Jarvis*, Franklin P.C. No. 546296. On March 3, 2023, the probate court terminated the

conservatorship of Jarvis, and Juhola assumed responsibility as Jarvis's financial power of attorney. Juhola testified that the change was intended to reduce the cost of administering Jarvis's assets.

{¶ 9} Juhola testified that his relationship with Jarvis was friendly and that he felt that he was like an older brother or father toward Jarvis. Jarvis had agreed to move from his house in the country to a more accessible home in the city to increase his independence and conserve his assets. But Jarvis's guardianship account was short on cash when Juhola and Jarvis found a condominium that suited Jarvis's needs. Believing that he would be unable to sell Jarvis's existing home or stocks quickly enough to make a cash offer and seeking to avoid capital-gains taxes on the sale of stocks, Juhola transferred $70,000 from Woelfel's account to Jarvis's checking account at the same bank on October 23, 2023. As with his transfers to McDaniel's account, Juhola did not request permission from the probate court or Woelfel's wife to transfer money from Woelfel's account. Nor did he tell Jarvis that he had used another client's money to purchase his new home.

{¶ 10} On November 29, 2023, the bank reported to a supervisor at Franklin County Adult Protective Services the transfer from the Woelfel account to the Jarvis account. The next day, the probate court ordered Juhola to provide bank statements regarding the unauthorized transfer of funds from the Woelfel account to the Jarvis account and to return those funds to the Woelfel account within two weeks of its order. With Jarvis's knowledge, Juhola liquidated a portion of Jarvis's stock holdings, and on December 11, he deposited $70,000, plus $479 in interest, into Woelfel's account. The probate court later ordered Juhola to personally reimburse Jarvis for the $479 interest payment, and Juhola complied with that order.

{¶ 11} On December 27, the probate-court magistrate conducted a hearing to consider the removal of Juhola as guardian of Woelfel's estate. Woelfel's wife spoke on Juhola's behalf. During that hearing, the magistrate asked Juhola whether

4

he had ever transferred money from one client's account to another aside from the instance involving the Woelfel and Jarvis accounts. Despite having twice transferred funds from Woelfel's account to McDaniel's account earlier that year, Juhola replied, "No, this was a unique situation." On January 5, 2024, the magistrate ordered that Juhola be removed as the guardian of Woelfel's estate. A few days later, Woelfel's wife sent Juhola an email expressing that she was "troubled and saddened" by the magistrate's order removing him as the guardian of her husband's estate.

{¶ 12} Following McDaniel's death on January 8, Juhola reviewed McDaniel's accounts and informed the court by email that he "was mistaken in [his] belief that the [Woelfel]-Jarvis transaction was the first and only unauthorized loan from one Ward to another." He then disclosed the "loans" he had made to McDaniel from Woelfel's account.

{¶ 13} The probate court ordered Juhola to provide an accounting of the 14 other matters in which he was serving as a fiduciary. Then, over four days, the court conducted hearings in each of those cases but found no evidence of any additional wrongdoing.

{¶ 14} The parties stipulated and the board found by clear and convincing evidence that Juhola's conduct violated Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). The board noted that Comment 5 to Prof.Cond.R. 8.4 emphasizes the heightened responsibility of lawyers holding public office or positions of private trust, including guardians. That comment further advises that an abuse of such positions of trust "can suggest an inability to fulfill the professional role of lawyers," thus

offering additional support for the board's finding that Juhola's violation of his position of trust adversely reflects on his fitness to practice law. We adopt the board's findings of misconduct and specifically find that Juhola's multiple violations of his positions of private trust as guardian of the estates of Woelfel and McDaniel and as attorney-in-fact for Jarvis are sufficiently egregious to support the finding of a Prof.Cond.R. 8.4(h) violation, *see Disciplinary Counsel v. Bricker*, 2013-Ohio-3998, ¶ 21.

## AGGRAVATING AND MITIGATING FACTORS

**{¶ 15}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 16}** The parties stipulated that four mitigating factors are present, and the board found the same: (1) Juhola has a clean disciplinary record, (2) he made a timely, good-faith effort to make restitution or to rectify the consequences of his misconduct, (3) he made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, and (4) he presented letters from two attorneys who attested to his good character. *See* Gov.Bar R. V(13)(C)(1), (3), (4), and (5). In addition the board noted that the magistrate who conducted the review of Juhola's guardianship accounts reported the following to relator's office:

> [A]s always, I was impressed by the detailed understanding [Juhola] has of each case and the fact that he genuinely cares about his wards.
>
> I would also like to let you know that Mr. Juhola has conducted himself with great dignity throughout this terrible

6

> situation. He has always been respectful and cooperative, but I find
> it significant that he has remained so under difficult circumstances.

Furthermore, the board found that Juhola's testimony was consistent with the magistrate's observations.

{¶ 17} Although the parties did not stipulate to any aggravating factors, the board found that Juhola had acted with a dishonest or selfish motive, engaged in a pattern of misconduct, and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(2), (3), and (4).

{¶ 18} In this case, relator recommended that Juhola be suspended from the practice of law for two years with 18 months stayed, while Juhola argued in favor of a public reprimand or a fully stayed suspension.

{¶ 19} The board, however, recommends that Juhola be suspended from the practice of law for six months and that upon his first appointment as a guardian following his reinstatement to the profession, he be required to work with a monitoring attorney appointed by relator for one year, with the monitoring focused on the use and distribution of guardianship funds. In support of that sanction, the board considered five cases in which we imposed sanctions ranging from permanent disbarment to a fully stayed one-year suspension for misconduct involving the misappropriation of funds—*Cleveland Bar Assn. v. Dixon*, 2002-Ohio-2490; *Disciplinary Counsel v. Thomas*, 2016-Ohio-1582; *Disciplinary Counsel v. Blair*, 2011-Ohio-767; *Disciplinary Counsel v. Jancura*, 2022-Ohio-3189; and *Disciplinary Counsel v. Gorby*, 2015-Ohio-476.

{¶ 20} We begin our consideration of the appropriate sanction for Juhola's misconduct with the presumption that disbarment is the appropriate sanction for the misappropriation of client funds. *See Disciplinary Counsel v. Burchinal*, 2012-Ohio-3882, ¶ 17. That sanction, however, "may be tempered with sufficient evidence of mitigating or extenuating circumstances." *Disciplinary Counsel v.*

*Edwards*, 2012-Ohio-5643, ¶ 18. We have also held that "[w]hen an attorney engages in a course of conduct [involving dishonesty, fraud, deceit, or misrepresentation], the attorney will be actually suspended from the practice of law for an appropriate period of time," *Disciplinary Counsel v. Fowerbaugh*, 1995-Ohio-261, syllabus, though "an abundance of mitigating evidence can justify a lesser sanction," *Disciplinary Counsel v. Markijohn*, 2003-Ohio-4129, ¶ 8, citing *Dayton Bar Assn. v. Kinney*, 2000-Ohio-445. With these precepts in mind, we proceed to examine the cases that the board considered to support its recommended sanction of a six-month suspension followed by one year of monitored probation.

{¶ 21} In *Dixon*, the attorney neglected and provided incompetent representation regarding a probate estate, failed to timely deliver assets to the beneficiaries, and failed to provide accurate information and accounts to her client and the court in a timely fashion. Dixon also withdrew more than $252,000 from a fiduciary account for her own use, transferred an additional $110,000 in client funds to her brother and another person without her client's knowledge, charged an excessive fee, and initially failed to cooperate in the resulting disciplinary investigation. Although she periodically reimbursed the fiduciary account, on two occasions she falsely identified the deposit of her own funds as loans to her client.

{¶ 22} Dixon had no prior discipline and submitted positive character references. But we discounted the mitigating effect of her payment of restitution, noting that she had made the payment only after the conservator of the estate filed suit to reclaim the misappropriated funds and after Dixon negotiated a settlement in which she paid the estate roughly $152,000 in exchange for a release of all claims against her. We concluded that those mitigating factors were insufficient to justify a sanction less than permanent disbarment. *Dixon*, 2002-Ohio-2490, at ¶ 27.

{¶ 23} In *Thomas*, 2016-Ohio-1582, the attorney misappropriated over $200,000 from at least four wards over a period of more than six years, and he attempted to conceal his theft by filing false inventories with the probate court on

at least three occasions. Thomas used the stolen money to fund his drug addiction and to compensate for the loss of income occasioned by that addiction. In addition to violating multiple ethical rules, Thomas was convicted of three felonies arising from his misconduct—two counts of theft and one count of theft from the elderly— and sentenced to a four-and-a-half-year prison term. In the presence of four aggravating factors and five mitigating factors, we indefinitely suspended Thomas from the practice of law and imposed multiple conditions on his reinstatement to the profession, including the payment of nearly $92,000 in restitution. *Thomas* at ¶ 10-11, 18. Juhola's misconduct, while serious, does not rise to the level of misconduct at issue in *Dixon* or *Thomas*.

{¶ 24} In *Jancura*, 2022-Ohio-3189, the attorney made a series of withdrawals from her deceased aunt's estate totaling more than $27,000. Although she may have been entitled to part of those funds as payment of her fees for her work administering the estate, she did not seek the probate court's approval before taking the money. She then forged receipts to conceal that she had used $5,200 of the misappropriated funds to buy a car for herself, and she induced her husband, who was also an attorney, to unknowingly make additional false representations to an attorney who had been hired to review the estate's records.

{¶ 25} In addition to the three aggravating factors present in this case, Jancura's misconduct also harmed vulnerable victims, namely, two minor children who were the sole heirs of her aunt's estate. *Id*. at ¶ 18. The mitigating factors were also similar to those present here, except that we did not afford full mitigating effect to the character letters submitted on Jancura's behalf because the authors did not appear to understand the full extent of her misconduct. *Id*. at ¶ 19. And even though Jancura acknowledged the wrongfulness of and expressed remorse for her misconduct, as Juhola did in this case, she also offered several excuses, which showed that she did not accept full responsibility for her actions. *Id*. at ¶ 21. We

suspended Jancura for two years with the second year conditionally stayed. *Id.* at ¶ 27.

{¶ 26} In *Blair*, 2011-Ohio-767, the attorney misappropriated almost $17,000 in funds belonging to her incompetent ward for her own benefit. Blair also authorized her staff to prepare and file probate documents with no oversight. In the absence of proper supervision, her staff prepared a false motion to correct an inventory, forged her signature on an affidavit in support of that motion, notarized it, and then filed those documents with the court. Her staff later prepared and filed a false guardian account to conceal Blair's misappropriation.

{¶ 27} In contrast to the three aggravating factors present in this case, just one aggravating factor was present in *Blair*—a dishonest or selfish motive. *Blair* at ¶ 16. In addition to the mitigating factors present in this case, we found that Blair's active participation in the Ohio Lawyers Assistance Program ("OLAP"), Alcoholics Anonymous, and mental-health treatment qualified as "other interim rehabilitation" under the predecessor to Gov.Bar R. V(13)(C)(8) even though she did not establish her diagnosed chemical dependency or depression as mitigating factors. *Id.* at ¶ 15, 17. We imposed a two-year suspension for Blair's misconduct, with 18 months stayed on the conditions that she serve an 18-month period of monitored probation, remain in compliance with her OLAP contract, continue to participate in counseling, and complete 12 hours of continuing legal education ("CLE") in law-office management. *Id.* at ¶ 21.

{¶ 28} Lastly, in *Gorby*, 2015-Ohio-476, the attorney engaged in dishonest conduct, commingled personal and client funds, and misappropriated approximately $6,000 from her sister and brother-in-law, whom she was representing in a foreclosure proceeding. Gorby used the funds to pay personal and business expenses unrelated to the foreclosure. Gorby reimbursed the money, and we acknowledged that her clients had suffered no harm and that Gorby posed little, if any, threat to the public because her misconduct was the product of a "very

contentious family relationship." *Id*. at ¶ 15. We suspended her from the practice of law for one year but stayed the entire suspension on the conditions that she engage in no further misconduct and serve a one-year period of monitored probation focused on law-office and trust-account management. *Id*. at ¶ 28.

{¶ 29} The facts of this case differ from the facts of *Dixon*, *Thomas*, *Jancura*, *Blair*, and *Gorby*, in that Juhola did not use Woelfel's money to pay his own expenses or line his own pocket. Instead, he used the misappropriated funds as a "bridge" to secure the purchase of the home that Jarvis desired and to pay for McDaniel's housing costs until he was able to liquidate portions of their own noncash assets to cover their expenses. Despite his claimed good intentions, his actions violated his primary duty as the guardian of Woelfel's estate—to manage the estate in Woelfel's best interests. *See* R.C. 2111.14(A)(2). Fortunately, Woelfel suffered no harm as a result of Juhola's misconduct.

{¶ 30} Juhola reimbursed Woelfel the $25,000 he had used to pay McDaniel's living expenses within three months of making the first withdrawal. But when he filed an accounting for the Woelfel estate with the probate court, he lied to the court by omitting the two withdrawals that he had made for McDaniel's benefit and the reimbursement he later made to Woelfel's account. Those omissions violated R.C. 2109.302(A), which directs, "Every account shall include an itemized statement of all receipts of the guardian or conservator during the accounting period and of all disbursements and distributions made by the guardian or conservator during the accounting period." Less than two weeks after filing the false account, Juhola withdrew an additional $70,000 from Woelfel's account for Jarvis's benefit.

{¶ 31} During his disciplinary hearing, Juhola testified, "I mistakenly thought it was no harm, no foul because Mr. Woelfel had already had his money back. It didn't really happen—make a big difference in the final numbers." However, Juhola explained that he now understands that it was dishonest and wrong

for him to take funds from Woelfel's account for the benefit of others and to conceal his actions from the court.

{¶ 32} In contrast to the unique circumstances in *Gorby*, the difficult financial decisions that Juhola faced in caring for his wards and principal are not isolated incidents borne from a legal representation tied to a contentious family relationship. They are a common occurrence in life and in guardianship proceedings in which the needs and wants of an individual or a ward must be balanced against hard economic realities and limited resources. Juhola will undoubtedly find himself at this same crossroad again if he continues to serve as a court-appointed guardian. He cannot allow his empathy for one ward to take precedence over his duty to another.

{¶ 33} The board suggests that a six-month suspension followed by a one-year period of monitored probation focused on the use and distribution of guardianship funds will deter Juhola from engaging in similar misconduct. Given the amount that Juhola misappropriated from Woelfel and his effort to conceal his actions by making multiple false representations to the probate court, we believe that a longer suspension with a partial stay—similar to the sanctions imposed in *Jancura*, 2022-Ohio-3189, ¶ 27, and *Blair*, 2011-Ohio-767, ¶ 21—is necessary to impart the seriousness of Juhola's misconduct and to further discourage him and others from using the assets of one client or ward to make unauthorized loans for the benefit of another. Therefore, we find that the appropriate sanction for Juhola's misconduct is a two-year suspension with 18 months stayed on the condition that Juhola commit no further misconduct. In addition, Juhola shall serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21). The period of monitored probation will commence upon Juhola's first appointment as a guardian following his reinstatement to the practice of law and will be focused on the proper use and distribution of guardianship funds.

**CONCLUSION**

**{¶ 34}** Michael Duane Juhola is suspended from the practice of law in Ohio for two years with 18 months stayed on the condition that he engage in no further misconduct.  If Juhola violates the condition of the stay, the stay will be lifted and he will serve the entire two-year suspension.  Upon reinstatement to the practice of law, Juhola shall serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21) that shall commence upon his first appointment as a guardian and be focused on the proper use and distribution of guardianship funds.  Costs are taxed to Juhola.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Cara L. Dawson, Assistant Disciplinary Counsel, for relator.

Michael Duane Juhola, pro se.

_____